William R. POOLE, Jr., Petitioner,

v.

WORKERS' COMPENSATION
APPEAL BOARD (Warehouse
Club, Inc.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 6, 2000.

Decided April 5, 2001.

Louis M. Tarasi, Jr., Pittsburgh, for petitioner.

F. David Dermotta, Pittsburgh, for respondent.

Before DOYLE, President Judge,
COLINS, Judge, McGINLEY, Judge,
SMITH, Judge, PELLEGRINI, Judge,
FLAHERTY, Judge, and
LEADBETTER, Judge.

McGINLEY, Judge.

William R. Poole, Jr. (Claimant) seeks review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) granting of Warehouse Club, Inc.'s (Employer) request for subrogation.

The WCJ made the following pertinent findings of fact:

6. This Workers' Compensation Judge finds, based on her prior Decisions, that the claimant was employed by the defendant employer on March 8, 1989, as a wholesale canvasser at an average weekly wage of $155.87. The claimant sustained an injury (aggravation of a pre-existing back condition) in the course of his employment on March 8, 1989, when the claimant slipped on ice and fell in the parking lot in front of the defendant employer's building. The claimant was awarded workers' compensation benefits for temporary total disability relating to the March 8, 1989, injury at the rate of $140.28 per week beginning March 9, 1989. The claimant's disability benefits were commuted by Order of this Workers' Compensation Judge circulated on September 26, 1996. The claimant as a result of that Order, was paid $50,540.00 representing the moneys due the claimant for partial disability benefits and $20,460.00 for unreimbursed medical expenses.

7. The claimant, on May 6, 1995, based on the pleadings filed in the legal malpractice action, filed a civil complaint against his former legal counsel alleging that his former legal counsel had been

negligent in his representation of the claimant as the claimant's third party complaint had been filed against the wrong parties. The third party complaint had been filed against Kossman Development and Paul Kossman alleging that Kossman Development Company was owned by Paul Kossman and that Kossman Development Company were [sic] the owners of the property where the claimant had fallen on March 8, 1989. The claimant's third party complaint against Paul Kossman and the Kossman Development Company was dismissed by the Westmoreland County Court of Common Pleas on May 27, 1992, as the Court found that Paul Kossman and Kossman Development Company were the incorrect parties. The claimant was unable to file a third party complaint against the correct parties since the two (2) year statute of limitations had expired.

8. Travelers Insurance Company, based on the letters from the claims representatives dated October 19, 1995, and July 23, 1998, and on Mr. Tarasi's July 23, 1998, letter requested subrogation against any moneys obtained by the claimant as a result of the legal malpractice suit. The claimant denied the defendant insurer's request for subrogation on the basis that no workers' compensation lien existed against the legal malpractice action.

9. The claimant, on July 22, 1998, filed a Praecipe to Settle and Discontinue the legal malpractice action stating that the matter had been settled.

10. Claimant's current counsel has refused to provide defendants [Employer and Insurer] with any information regarding the settlement alleging that the claimant is precluded from releasing such information by a confidentially clause contained in the settlement agreement for the legal malpractice action.

11. This Workers' Compensation Judge finds, based on the record as a whole, that the defendants [Employer and Insurer] are entitled to subrogation against the moneys received by the claimant as a result of the legal malpractice action. The legal malpractice action arose from a third party claim filed for the injuries sustained by the claimant on March 8, 1989, in the course of the claimant's employment with the defendant employer. The claimant was paid workers' compensation benefits for the March 8, 1989, injuries. The claimant had to establish that the claimant would have recovered in the initial third party claim in order to recover any damages in his legal malpractice action and could not recover more moneys in the legal malpractice action than the claimant could have obtained in the initial third party action. Denial of the defendants' [Employer and Insurer] request for subrogation would result in double recovery for the claimant and would violate the intent of § 319 of the Workers' Compensation Act.

WCJ's Decision, March 26, 1999, Findings of Fact Nos. 6–11 at 3–5.

The WCJ determined that Employer and Insurer were entitled to subrogation and ordered Claimant to disclose the amount of the settlement of the legal malpractice action.

The Board affirmed in part and remanded for further proceedings:

As noted by the federal court in *Graham* [*v. Liberty Mutual Group*, No. 97–4507, 1998 WL 961376 (E.D.Pa. December 14, 1998)] there is a strong public policy against double recovery and an employer's absolute right to subrogation is the most effective method of preventing a double recovery by injured work-

ers. We further agree with the court that no distinction should lie between a worker who recovers directly from a third party tortfeasor and one who recovers from his or her attorney because of the third party tortfeasor's same tortious conduct. We are satisfied that it was not the intent of the Legislature to make an employers' right to subrogation dependent upon the competence or incompetence of Claimant's attorney.

. . . .

As a result, we believe that the principles of equity direct us to affirm the decision of the Judge granting Defendant's [Employer] request for subrogation.

Board's Decision, September 28, 1999, at 6–7.

On appeal [1] Claimant contends that Employer does not have a right of subrogation to the proceeds of his settlement with his former attorneys. Specifically, Claimant asserts that his legal malpractice claim was for breach of contractual duties and not for his physical injury.

Section 319 of the Workers' Compensation Act (Act) [2], 77 P.S. § 671 provides:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate

or his dependents, and shall be treated as an advance payment by the employer on account of any future installments of compensation. (footnote omitted).

The question of whether the employer or its workers' compensation carrier has a right of subrogation to a legal malpractice claim under Section 319 of the Act has not been addressed by our Pennsylvania courts. However, our Pennsylvania Supreme Court has provided some insight concerning the rationale behind the right of subrogation and its applicability.

In *Dale Manufacturing Co. v. Bressi*, 491 Pa. 493, 421 A.2d 653 (1980), Edith Bressi (Bressi) had sustained a work-related injury to her back in the nature of a ruptured disc. Bressi underwent surgery for removal of the disc. "The parties entered into an open compensation agreement under which claimant [Bressi] was to receive weekly compensation plus medical and hospital expenses." *Id.* at 495, 421 A.2d at 654. After surgery, Bressi developed an infection that prevented her surgical wound from healing. After Bressi underwent a second operation the doctor discovered that he had failed to remove a "cottonoid pad" during the initial operation. Bressi brought suit and alleged that her doctor was negligent. Bressi's doctor settled the claim in the amount of $30,000.

Pursuant to a compensation agreement, Dale Manufacturing Company (Dale) paid for the two operations and continued weekly compensation payments. On June 25, 1973, Dale filed a petition to suspend payments and to determine subrogation rights. Dale alleged that the doctor's negligence had aggravated Bressi's initial inju-

---

1. This Court's review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence.

*Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa. Cmwlth.455, 576 A.2d 1163 (1990).

2. Act of June 2, 1915, P.L. 736, *as amended.*

ry and that it was entitled to subrogation to recover previously paid compensation and medical expenses and also a credit for future payments. The WCJ agreed and directed subrogation. The Board reversed the WCJ and this Court affirmed on appeal. *See Dale Manufacturing Co. v. Workmen's Compensation Appeal Board*, 34 Pa.Cmwlth. 31, 382 A.2d 1256 (1978).

Our Pennsylvania Supreme Court granted allocatur and noted:

> Employer [Dale] correctly asserts that the rationale for this right of subrogation is threefold: to prevent double recovery for the same injury by the claimant, to insure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his negligence.... "[T]his result is just, because the party who caused the injury bears the full burden; the employee is 'made whole,' but does not recover more than what he requires to be made whole; and the employer, innocent of negligence, in the end pays nothing." Thus, where a third party's negligent conduct causes injury to an employee actually engaged in the business of his employer, there is a clear, justifiable right to subrogation under Section 319 of the Act. In the case at issue, however, the third party's negligent conduct occurred subsequent to the original, compensable injury. In order for employer to establish a right of subrogation in this case, the Commonwealth Court has said, 'the employer must show he is compelled to make payments by reason of the negligence of a third party and the fund to which he seeks subrogation was for the same compensable injury for which he is liable under the Act.' Dale Manufacturing Company ..., 34 Pa.Cmwlth. at 35, 382 A.2d at 1259.

The above assertion is based upon the rationale behind Section 319 of the Act as we noted in *Stark v. Posh Construction Company*, [192 Pa.Super. 409, 162 A.2d 9 (1960) ], and the distinction drawn in *Savage v. Jefferson Medical College Hospital*, 7 Pa.Cmwlth. 35, 298 A.2d 694 (1972). The court in Savage drew a distinction between new and independent injuries caused by a third party and those that aggravate or extend the initial compensable injury, holding that only the latter entitled an employer to subrogation rights....

. . . .

In the present case, employer seeks to establish evidence from pleadings which were filed in an unrelated case in which he was not a party and where factual issues were never determined because the case was settled out of court .... (citations omitted).

*Id.* at 496–98, 421 A.2d at 654–55. The Supreme Court affirmed this Court's determination that Dale failed to establish a right to subrogation under Section 319 of the Act.

Recently, in *Ramsey v. Kohl*, 231 Mich. App. 556, 591 N.W.2d 221 (1998), the Michigan Court of Appeals addressed the issue of subrogation pursuant to the Michigan workers' compensation statute that is similar to Pennsylvania's. In *Ramsey*, Charles Ramsey (Ramsey) alleged that he had sustained a disabling medical condition in September of 1986, as a result of his exposure to certain industrial chemicals while employed by E.H. Rowley (Rowley). The Accident Fund Company (Accident Fund), Rowley's insurer, settled Ramsey's claim in the amount of $60,000. In February of 1987, Ramsey filed a products liability action against the manufacturers and sellers of certain chemicals that allegedly caused his medical injury. "One year later, plaintiff's [Ramsey] suit was dismissed because

of defendants' [Ramsey's lawyers] failure to properly serve the products liability complaint." *Id.* at 558, 591 N.W.2d at 223. In October of 1984, Ramsey filed a legal malpractice action against his former attorneys. Accident Fund sought to intervene in order to protect its interest in any recovery by Ramsey. The trial court denied Accident Fund's motion. Ramsey settled with his attorneys in the amount of $335,000 and the malpractice action was dismissed. At the final settlement proceeding, Accident Fund requested that $40,000 of the settlement proceeds be placed in escrow pending a determination of the workers' compensation lien issue. The trial court again denied Accident Fund's request.

On appeal Accident Fund contended that it had a right to intervene. The Michigan Court of Appeals disagreed and noted:

> The question whether an employer or its insurance carrier may assert a worker's compensation lien against the proceeds of a legal malpractice action is one of first impression in Michigan. Courts in other jurisdictions considering similar provisions are split with regard to the question....
>
> The primary goal of judicial interpretation of statutes is to ascertain the intent of the Legislature.... The first criterion in determining intent is the specific language of the statute.... The Legislature is presumed to have intended the

meaning it plainly expressed.... *If the plain language of the statute is clear, no further judicial interpretation is necessary ....*

The clear language of M.C.L. § 418.827; MSA 17.237(827)[3] limits the application of the worker's compensation liens to those third-party actions in which recovery is sought from persons liable for causing the injury for which compensation was payable. The first subsection of the statute provides that ... the injured employee may bring an action against 'the third party' in addition to receiving worker's compensation benefits.... *In this case, defendants (plaintiff's [Ramsey] lawyers) did not cause the injury that led to compensation payments. Put differently, the circumstances that allegedly caused plaintiff's [Ramsey] injury did not 'create' a legal liability in the defendant lawyers.* Accordingly, the statute does not provide for the imposition of a worker's compensation lien on the proceeds of plaintiff's [Ramsey] legal malpractice claim.

*We are aware of the general policy against double recoveries indicated by M.C.L. § 418.827; MSA 17.237(827).... However, it is not for this Court to enforce the general policy suggested by a statute at the expense of the specific language of the statute. The wisdom of the statute is for the Legislature to de-*

---

**3.** MCL 418.827; MSA 17.237(827) provides: Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than a natural person in the same employ or the employer to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies but the injured employee or his or her dependents or personal representative may also proceed to enforce

the liability of the third party for damages in accordance with this section. If the injured employee or his or her dependents or personal representative does not commence the action within 1 year after the occurrence of the personal injury, then the employer or carrier, within the period of time for the commencement of actions prescribed by statute, may enforce the liability of such other person in the name of that person.... Any party in interest shall have a right to join in the action.

*cide and the law must be applied as written* . . . .

Because M.C.L. § 418.827; MSA 17.237(827) does not provide for the imposition of a worker's compensation lien in this case, we hold that the trial court did not err in denying the Accident Fund's motion to intervene. (footnote and emphasis added and citations omitted).

*Ramsey*, 231 Mich.App. at 560–63, 591 N.W.2d at 224–25.

Here, Section 319 of the Act, 77 P.S. § 671 parallels the Michigan workers' compensation statute, M.C.L. § 418.827; MSA 17.237(827). Section 319 of the Act and M.C.L. § 418.827 clearly require causation between the injury and the act or omission of a third party to facilitate subrogation. Also, both statutes provide that any recovery from a third party shall be used to reimburse the employer for any amount of compensation paid. Lastly, Section 319 of the Act and M.C.L. § 418.827 do not provide the employer or its insurer the right of subrogation to the proceeds of a claimant's legal malpractice claim. As noted by Judge Stephen J. Markman in his concurring opinion in *Ramsey*, "[w]hile a lien against the malpractice award may reasonably be said to be within the 'spirit' of § 827, ultimately it is not within its language." *Ramsey*, 231 Mich.App. at 567, 591 N.W.2d at 226 (concurring opinion of Judge Markman). Such circumstance is precisely that which we encounter here.

Accordingly, we reverse.

### ORDER

AND NOW, this 5th day of April, 2000, the order of the Workers' Compensation Appeal Board in the above-captioned matter is reversed.

LEADBETTER, Judge, Dissenting.

In this case, the court must decide whether the proceeds of a legal malpractice action may be subrogated by an employer paying workers' compensation benefits when the damages in the malpractice action are based upon the same injury that gave rise to the workers' compensation benefits. Because I believe that they may, I respectfully dissent.

Pennsylvania's courts have never before addressed the question of whether legal malpractice claims may be subrogated by a workers' compensation carrier, and a survey of other jurisdictions which have addressed this issue reveals that courts are divided. New Jersey, for example, interpreting a workers' compensation statute similar to Pennsylvania's, concluded that the statute was "not to be so rigidly confined and was to apply to recoveries that were the functional equivalent of a recovery from the actual third-party tortfeasor." *Frazier v. N.J. Mfrs. Ins. Co.*, 142 N.J. 590, 598, 667 A.2d 670, 674 (1995). Further, noting that a contrary determination would lead to a double recovery for the claimant, the court observed:

The Legislature did not intend such disparate treatment between a worker who recovers directly from the third-party tortfeasor and a worker who recovers from his attorney because of the third-party tortfeasor's same tortious conduct. No apparent justification exists for allowing an injured employee who receives a legal malpractice recovery to be in a better position than an injured employee who recovers directly from the tortfeasor. Malpractice claims that are derivative of third-party claims are therefore subject to the workers' compensation lien.

*Id.* at 601–02, 667 A.2d at 676.

Michigan, on the other hand, does not allow subrogation of legal malpractice

claims. In its interpretation of a substantially similar statute, Michigan found, "In this case, defendants (plaintiff's lawyers) did not cause the injury that lead to the compensation payments. Put differently, the circumstances that allegedly caused plaintiff's injury did not 'create' a legal liability in the defendant lawyers." *Ramsey v. Kohl*, 231 Mich.App. 556, 562, 591 N.W.2d 221, 224–25 (1998). And, recognizing that the state has a general policy against double recoveries, the court observed, "it is not for this Court to enforce the general policy suggested by a statute at the expense of the specific language of the statute." *Id.* at 562–63, 591 N.W.2d at 225.

I feel that New Jersey's is the better view, and that the majority reads our subrogation statute too narrowly. The injury in a legal malpractice case is not new or independent. Rather, in Pennsylvania, a legal malpractice recovery is a derivative recovery, determined by the amount that would have been recovered from the third-party tortfeasor had the claim been brought forward properly:

> In order to establish a claim of legal malpractice, a plaintiff/aggrieved client must demonstrate three basic elements:
> 1) employment of the attorney or other basis for a duty;
> 2) the failure of the attorney to exercise ordinary skill and knowledge; and
> 3) that such negligence was the proximate cause of damage to the plaintiff.

*Kituskie v. Corbman*, 552 Pa. 275, 281, 714 A.2d 1027, 1029 (1998) (citing *Rizzo v. Haines*, 520 Pa. 484, 499, 555 A.2d 58, 65 (1989)). In order to demonstrate "damage" in the third element, a plaintiff must prove a viable cause of action against the third-party he wished to sue in the underlying case, and the measure of damages is the amount lost through failure to prosecute adequately the underlying action. *Id.* at 281, 714 A.2d at 1030. In fact, the legal malpractice action is so intimately tied to the merits of the underlying action that an attorney may mount a successful defense by demonstrating that damages in the underlying action would be uncollectable. *Id.* at 285, 714 A.2d at 1032. Further, as the United States District Court for the Eastern District of Pennsylvania has stated, in attempting to predict our Supreme Court's resolution of this issue:

> By permitting subrogation, the employee will recover those losses he or she would have recovered if the third party action had been brought in a timely manner and the employer will effectively be reimbursed to the extent it had paid workers' compensation benefits, at no loss to the worker.

*Graham v. Liberty Mutual Group*, No. Civ. A. 97–4507, 1998 WL 961376, at *8 (E.D.Pa. Dec.14, 1998). Thus, I would hold that damages stemming from a legal malpractice claim are the "functional equivalent" of a third-party tort recovery, and therefore subrogable by workers' compensation carriers.

PELLEGRINI, Judge, joins in this dissenting opinion.