**Doris GRIFFIN, Petitioner,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (THOMAS JEFFERSON UNIVERSITY HOSPITAL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 12, 1999.

Decided Dec. 29, 1999.

Reconsideration Denied Feb. 18, 2000.

**62**

Jeffrey S. Kahn, Plymouth Meeting, for petitioner.

Kenneth M. Portner, Philadelphia, for respondent.

Before PELLEGRINI, J., FRIEDMAN, J., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

Doris Griffin (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) granting Thomas Jefferson University Hospital (Employer) a right of subrogation against funds that a third-party paid to settle Claimant's medical malpractice action filed in connection with surgery to correct her work-related back injury.

Claimant injured her back while working as a phlebotomist for Employer, sustaining a foraminal herniation at L3–L4 for which Employer issued a Notice of Compensation Payable (NCP). To correct this condition, Claimant consulted with Conrad Fraider, D.O. (Dr. Fraider), who performed a posterior lumbar interbody fusion at L4–5 to repair what he diagnosed as an internal disc disruption. Alleging that her surgery was performed negligently and that she sustained injuries from twice falling out of a defective bed while recovering in the hospital, Claimant filed an action in the Court of Common Pleas of Philadelphia County against Dr. Fraider and other health care providers alleging, *inter alia*, medical malpractice and negligence which eventually settled for $1,000,-000.[1] Employer then filed a modification petition asserting a right to subrogation against Claimant's recovery from the tort action to the extent of its payment of

---

1. Claimant's third-party tort action was filed against the Hospital of the Philadelphia College of Osteopathic Medicine, Leonard F. Finkelstein, D.O., Timothy A. Churchill, and Dr. Fraider, raising 13 counts arising from, *inter alia*, inappropriate practices and procedures utilized by Dr. Fraider in performing the September 12, 1991 surgery.

workers' compensation indemnity and medical benefits since the surgery.

To establish that the settlement flowed from Claimant's compensable work injury, Employer offered the testimony of R. Bruce Heppenstall, M.D. (Dr. Heppenstall), that was taken in preparation for the third-party tort action. In that deposition, Dr. Heppenstall diagnosed Claimant with a failed posterior spine fusion at L4–5 occurring as a result of Dr. Fraider negligently performing the operation to correct Claimant's work-related back injury. As a result of that negligence, Dr. Heppenstall opined that Claimant was completely disabled due to scarring formation around her spinal cord and nerve roots, together with the two incidents of her falling out of a defective bed during her recovery period in the hospital. While he indicated that Claimant could not return to her job as a phlebotomist prior to surgery, Dr. Heppenstall believed that 90% of the patients that had a ruptured disc eventually got better through conservative therapy, and there was a possibility that Claimant might have recovered, but that possibility no longer existed after the negligent surgery.

In opposition, Claimant introduced evidence that she was awarded Social Security disability benefits as of February 16, 1990, because of her work-related injury and to establish that she was totally disabled well before the negligent surgery. Claimant also presented the reports of Paul M. Lin, M.D. and Carl R. Goodman, M.D., who opined that Claimant was totally disabled and would have remained so as a result of her original February 1990 work injury.

The WCJ found that Claimant's disability following Dr. Fraider's surgery was a result of the same compensable injury for which Employer was compelled to make payments to Claimant under the NCP, and that Employer had a right to subrogation to the fund created by the settlement of Claimant's third-party negligence and malpractice actions filed against Dr. Fraider. Claimant then appealed to the Board[2] which affirmed and this appeal followed.[3]

Claimant contends that Employer is not entitled to subrogation where Employer's liability for the compensable injury was not affected by the negligent surgery in that Claimant was totally disabled as a result of the original work injury and continued to remain totally disabled following surgery. Because Employer's obligation to make disability payments was unaffected by the surgery, Claimant contends that it would be inequitable to hold that Employer was entitled to a right of subrogation against the $1 million settlement. Employer, however, argues that because it is liable for any disability a claimant incurs who undergoes surgery to correct a work injury, *Powell v. Sacred Heart Hospital,* 514 A.2d 241 (Pa.Cmwlth.1986), and it was making compensation payments to claimant due to this surgery as well as paying for the surgery, it was entitled to subrogation.

■ An employer is given subrogation rights against third-party tortfeasor payments pursuant to Section 319 of the

2. Because the WCJ also determined that the amount to be subrogated was to be in accordance with the "gross method" rather than the "net method," Employer also appealed to the Board which also affirmed the WCJ on that determination, presumably, as a result of the Supreme Court's decision in *P & R Welding & Fabricating v. Workmen's Compensation Appeal Board (Pergola),* 549 Pa. 490, 701 A.2d 560 (1997), holding that the "gross method" was to be exclusively applied to subrogation claims in workers' compensation cases. Employer did not appeal this issue to this Court.

3. Our standard of review in reviewing a decision of a WCJ is limited to a determination of whether constitutional rights were violated, errors of law were committed, or the necessary findings were supported by substantial, competent evidence. *Vazquez v. Workmen's Compensation Appeal Board (Masonite Corporation),* 687 A.2d 66 (Pa.Cmwlth.1996). Whether an employer is entitled to subrogation is a question of law based upon the facts as found by the WCJ. *Helms Express v. Workmen's Compensation Appeal Board (Lemonds),* 126 Pa.Cmwlth. 287, 525 A.2d 1269 (1987).

Pennsylvania Workers' Compensation Act (Act),[4] which provides, "[w]here the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of compensation payable under this article by the employer...." To establish an entitlement to subrogation for the negligent conduct of a third-party occurring subsequent to the original injury, the employer must show that it was compelled to make payments by reason of the negligence of a third-party, and that the fund to which it seeks subrogation was for the same compensable injury for which it is liable under the Act. *Dale Manufacturing Co. v. Bressi*, 491 Pa. 493, 421 A.2d 653 (1980); *Helms Express, supra*.

■ To show that a subsequent injury is part of the original injury, the employer is required to show by unequivocal medical evidence only that the subsequent injury is "in whole or in part" a contributing factor in the original "compensable injury." *See Maitland Brothers Co., Inc. v. Workmen's Compensation Appeal Board (Moser)*, 92 Pa.Cmwlth. 421, 499 A.2d 713 (1985). When a claimant undergoes a negligent surgical procedure to alleviate a condition caused in the course of employment, the negligence is considered a contributing factor and not a separate event dissociated from the original injury. *Powell, supra*. Because it is undisputed that Claimant underwent the back operation, Employer has shown that her subsequent injury was a contributing factor in the original injury.[5]

■ Even though Employer has shown that the back operation was a result of the original injury because it was performed to alleviate conditions caused by the original injury, that does not necessarily mean that it was "compelled to make payments" as a result of the medical malpractice.[6] For example, if a claimant underwent a procedure that was expected to alleviate some symptoms of a work-related injury but it was acknowledged by all that even if the operation was successful, the claimant would never work anywhere again, the employer would not be entitled to subrogation for weekly benefits because it would not have been compelled to pay any additional weekly compensation benefits now or in the future due to the new component of the injury. To establish then that it was compelled to make compensation payments as result of a negligent surgery, Employer was also required to establish that the surgery was performed with the expected outcome that Claimant would be employable again.

4. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

5. Claimant contends that Employer has not shown that the surgery was part of the original injury and subrogation should not be allowed because our Supreme Court, in *Dale Manufacturing*, held that an employer was not entitled to subrogation where a claimant underwent back surgery to correct the work-related injury, but it was negligently performed causing an infection and was not considered an aggravation of his work-related injury. Claimant argues that case is substantially similar to the scarring of her spine caused by her work-related back surgery and subrogation should be denied. However, the reason our Supreme Court in *Dale Manufacturing* denied subrogation was not because of the nature of the injuries but because the employer did not request the appointment of an independent medical examiner and failed to offer medical evidence explaining the effect of the medical treatment upon the original compensable injury. More specifically, there was no evidence of record on which to make a determination as to whether the surgeon's failure to remove the cotton pad from the wound and the subsequent surgery required to remove the pad "either aggravated the original injury or caused a new and independent one." *Helms*, 525 A.2d at 1271.

6. The issue of whether the employer was "compelled to make payments" was not addressed in *Powell* in that the only issue involved was whether the negligent operation was a contributing factor bringing about the claimant's death since the claim arose from a new cause of action under a claim for death benefits filed by the claimant's spouse.

Claimant contends that Dr. Heppenstall's testimony is insufficient to meet that test because he did not state that the surgery would have allowed her to become employable again, but only stated that there was a possibility that the surgery would allow Claimant to sufficiently recover to become employable. This is one of those close cases that based on the facts as found, the "gist" placed on the evidence— to use a term that Employer has used— determines the outcome. However, because Employer had to make out its burden by clear and convincing evidence that Claimant would have been employable "but for" the surgery, see *Dale Manufacturing v. Workmen's Compensation Appeal Board (Bressi)*, 34 Pa.Cmwlth. 31, 382 A.2d 1256 (1978), *aff'd, Dale Manufacturing, supra,* Dr. Heppenstall, probably because his testimony was taken for use in the malpractice trial, did not address that issue with the specificity needed for Employer to meet its burden.

While Dr. Heppenstall testified that Dr. Fraider's malpractice caused Claimant's back condition to worsen, resulting in a failed posterior spine fusion at L4–5 and development of scar tissue around the spinal cord and nerve roots, and that Claimant experienced a relief of pain immediately following surgery but that the pain recurred after the falling incidents at the hospital during her recovery, he never stated that he expected the surgery to make her employable once again. When asked by Claimant's counsel in the medical malpractice action as to whether surgery would correct Claimant's condition so that she could become employable, Dr. Heppenstall testified as follows:

Q. So, therefore, did this patient have a potential for cure before this surgery?

\* \* \*

A. Before the surgery?
Q. Yes.
A. Yes.
Q. Does she have one now?

A. No.

(Notes of Testimony at 34.) Even if we take "cure" to mean employable, Dr. Heppenstall only testified that Claimant had the "potential" to become employable prior to the surgery and he did not give any indication of the probability of recovery, making his testimony equivocal in that regard. That is so, even though he testified that surgery was not required (as 90% of patients with a ruptured disc got better through his water therapy program, even though it took, in some instances, up to five years of treatment) because he never opined that Claimant was within the 90% of patients that would recover. He also admitted on cross-examination that Claimant had undergone water treatment before the surgery without improvement and he failed to testify that the surgery itself would allow Claimant to become employable. As such, Employer failed to meet its burden of establishing through unequivocal medical testimony that it was compelled to pay compensation as a result of the surgery for which it would be compelled to make payments in the future.

Consequently, because Employer has not made out that Claimant could have ever sufficiently recovered from her work-related injury to be employable, it correspondingly failed to establish that it was compelled to make payments due to the medical malpractice, precluding it from subrogation rights against Claimant's settlement. Accordingly, the order of the Board is reversed.

### *O R D E R*

AND NOW, this 29th day of December, 1999, the order of the Workers' Compensation Appeal Board dated June 30, 1999, Number A96–4183, is reversed.