## BRUBACHER EXCAVATING, INC., Petitioner,

### v.

## WORKERS' COMPENSATION APPEAL BOARD (Bridges), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Dec. 6, 2000.

Decided May 7, 2001.

Andrew E. Greenberg, Philadelphia, for petitioner.

Joan E. London, Reading, for respondent.

Before DOYLE, President Judge, COLINS, Judge, McGINLEY, Judge, SMITH, Judge, PELLEGRINI, Judge, FLAHERTY, Judge, and LEADBETTER, Judge.

McGINLEY, Judge.

Brubacher Excavating, Inc. (Brubacher) seeks review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) denial of Brubacher's petition for a subrogation lien.

The WCJ made the following pertinent findings of fact:

1. The claimant, James Bridges [Bridges], was employed by Brubacher ... on September 17, 1992 as a Master Mechanic.

2. On September 17, 1992, Bridges suffered a back injury at a job site operated by Brubacher ... while lifting a cylinder head from an engine.

3. On September 18, 1882[sic], Bridges gave notice to his employer of the injury.

4. From September 18, 1992 to November 8, 1993, Bridges was receiving total disability benefits in the amount of $455.00 per week.

5. On November 8, 1993, Bridges began working for Diesel Services, Inc. [Diesel] ... as a Service Writer/Service Advisor.

6. In this position with Diesel ... Bridges was earning approximately $400 per week, as well as receiving partial disability benefits in the amount of $245.46 per week.

7. As a result of Diesel's ... worker's compensation insurance carrier's refusal to extend coverage to Bridges, Bridges was terminated from his position at Diesel Services on November 22, 1993.

8. On November 22, 1993, Bridges' total disability benefits were reinstated.

9. Since November 22, 1993, Bridges has remained on total disability due to his back injury.

10. On or about February 2, 1995, Bridges filed a civil action in the United States District Court for the Eastern District of Pennsylvania to Docket No. 95 CV 0637, against Diesel ... under the Americans with Disabilities Act.

11. The above-referenced civil action alleged unlawful discrimination on the part of Diesel ... for its termination of Bridges based upon perceived disability.

12. The above-described federal civil action demands compensatory and punitive damages in excess of Fifty Thousand Dollars and 00/100 ($50,000.00).

13. Said civil action is currently pending in federal court, and is expected to be tried in or around November of 1995.[1]

---

1. On September 7, 1996, Bridges' ADA civil action was settled with Diesel for an undisclosed amount.

14. The two injuries (the back injury and the civil rights violation) are different in both type and causation.

15. Brubacher and Aetna do not have any right of subrogation against any recovery Bridges may obtain in the aforementioned civil action.

WCJ's Decision, July 24, 1996, Findings of Fact Nos. 1–15.

The WCJ concluded that Brubacher and Insurer were not entitled to subrogation because "[t]here is no provision whatsoever under the Pennsylvania Workmen's Compensation Act which permits an employer a right of subrogation as against a recovery in an action for a wrong unrelated to the causation of the compensable injury." WCJ's Decision, Conclusions of Law No. 8.

The Board affirmed and concluded:

In this case, the compensable injury is the Claimant's [Bridges] back injury. No action by Diesel caused the Claimant's [Bridges] back injury and no action by Diesel contributed to the Claimant's [Bridges] back injury. Rather, Diesel's actions resulted in a new and different injury, a civil rights violation, separate and apart from the original and compensable injury so that Defendant [Brubacher] is not entitled to subrogation.

. . . .

... [H]ere ... Diesel's action in illegally firing the Claimant [Bridges] was a subsequent, separate event disassociated with the Claimant's [Bridges] back injury. Although the Defendant [Brubacher] argues that Diesel's actions are associated with the Claimant's [Bridges] back injury in that it was because of the back injury Diesel refused to extend workers' compensation coverage and instead illegally fired the Claimant [Bridges], we believe this is too attenuated to entitle the Defendant [Brubacher] to subrogation.

[Also], in this case there were two separate injuries and two separate causes of actions. The Claimant [Bridges] receives workers' compensation benefits for his inability to work due to his back injury, and received a settlement from Diesel in restitution for his unlawful dismissal. The Claimant [Bridges] is not receiving a double recovery for one injury, but rather two recoveries for two separate injuries.

Board's Decision, March 5, 1999, at 3–5.

 On appeal [2] Brubacher contends that it has a right of subrogation to the proceeds of Bridges settlement with Diesel of his civil action under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101.

Section 319 of the Workers' Compensation Act (Act) [3], 77 P.S. § 671 provides:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employ-

2. This Court's review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa. Cmwlth. 455, 576 A.2d 1163 (1990).

3. Act of June 2, 1915, P.L. 736, *as amended.*

er on account of any future install-ments of compensation. (footnote omit-ted).

Brubacher asserts that the fundamental policy for the promulgation of the subroga-tion language in Section 319 of the Act is to prevent double recovery by the claim-ant.

In *Dale Manufacturing Co. v. Bressi,* 491 Pa. 493, 421 A.2d 653 (1980), our Penn-sylvania Supreme Court provided some in-sight concerning the rationale behind the right of subrogation. In *Dale,* Edith Bres-si (Bressi) had sustained a work-related injury to her back in the nature of a ruptured disc. Bressi underwent surgery for removal of the disc. "The parties en-tered into an open compensation agree-ment under which the claimant [Bressi] was to receive weekly compensation plus medical and hospital expenses." *Id.* at 495, 421 A.2d at 654. After surgery, Bres-si developed an infection that prevented her surgical wound from healing. After Bressi underwent a second operation the doctor discovered that he failed to remove a "cottonoid pad" during the initial opera-tion. Bressi brought suit and alleged that her doctor was negligent. Bressi's doctor settled the claim in the amount of $30,000.

Pursuant to a compensation agreement, Dale Manufacturing Company (Dale) paid for the two operations and continued weekly compensation payments. On June 25, 1973, Dale filed a petition to suspend payments and to determine subrogation rights. Dale alleged that the doctor's neg-ligence had aggravated Bressi's initial inju-ry and that it was entitled to subrogation to recover previously paid compensation and medical expenses and also a credit for future payments. The WCJ agreed and directed subrogation. The Board reversed the WCJ and this Court affirmed on ap-peal. *See Dale Manufacturing Co. v.*

*Workmen's Compensation Appeal Board,* 34 Pa.Cmwlth. 31, 382 A.2d 1256 (1978).

Our Pennsylvania Supreme Court grant-ed allocatur and noted:

Employer [Dale] correctly asserts that the rationale for the right of subrogation is threefold: to prevent double recovery for the same injury by the claimant, to insure that the employer is not com-pelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his negli-gence.... "[T]his result is just, because the party who caused the injury bears the full burden; the employee is made 'whole,' but does not recover more than what he requires to be made whole; and the employer, innocent of negligence, in the end pays nothing." Thus where a third party's negligent conduct causes injury to an employee actually engaged in the business of his employer, there is a clear, justifiable right to subrogation under Section 319 of the Act.

In the case at issue, however, the third party's negligent conduct occurred sub-sequent to the original, compensable in-jury. In order for employer to establish a right of subrogation in this case, the Commonwealth Court has said, 'the em-ployer must show he is compelled to make payments by reason of the negli-gence of a third party and the fund to which he seeks subrogation was for the same compensable injury for which he is liable under the Act. Dale Manufactur-ing Company ..., 34 Pa.Cmwlth. at 35, 382 A.2d at 1259.

The above assertion is based upon the rationale behind Section 319 of the Act as we noted in *Stark v. Posh Construc-tion Company,* [192 Pa.Super 409, 162 A.2d 9 (1960) ], and the distinction drawn in *Savage v. Jefferson Medical College Hospital,* 7 Pa.Cmwlth. 35, 298

A.2d 694 (1972). The court in *Savage* drew a distinction between new and independent injuries caused by a third party and those that aggravate or extend the initial compensable injury, holding that only the latter entitled an employer to subrogation rights....

....

In the present case, employer seeks to establish evidence from pleadings which were filed in an unrelated case in which he was not a party and where factual issues were never determined because the case was settled out of court .... (citations omitted).

*Id.* at 496–98, 421 A.2d at 654–55. The Supreme Court affirmed this Court's determination that Dale failed to establish a right to subrogation under Section 319 of the Act.

In *Maitland Brothers Co., Inc. v. Workmen's Compensation Appeal Board (Moser)*, 92 Pa.Cmwlth. 421, 499 A.2d 713 (1985), the claimant suffered a work-related injury to his back on May 9, 1990, and he received total disability benefits from that date. "On February 6, 1981, while driving his automobile, he was struck in the rear causing complaints for which he settled with this tortfeasor in the amount of $15,000.00." *Id.* at 714. Maitland Brothers Co., Inc. (Maitland) sought a termination of compensation benefits and alleged that "its liability for Claimant's continuing disability terminated or diminished by reason of the collision on February 6, 1981...." *Id.* at 714. The referee [WCJ] concluded that "[t]he accident to Claimant's back, in the very same place of the original accident 'in part' contributed to the *cessation of thought* of returning to work" and that "[u]nder the Act Defendant Carrier is subrogated to the right of the employee ... against such third party to the extent of the compensation payable under article 319 by the employer ...."

(emphasis in original). *Id.* at 715 *citing* the referee's Conclusion of Law No. 5. The referee dismissed the termination petition and directed Maitland and Insurer to take a $15,000 credit and that upon exhaustion of the credit Maitland and Insurer were to resume paying disability benefits. The Board reversed.

On appeal this Court addressed the subrogation issue:

As our emphasis [referring to the term compensable injury in Section 319 of the Act] has indicated, subrogation may only be achieved through a third party recovery to the extent that the damage caused by such third party has contributed to the 'compensable injury.' We take it, therefore, that Section 319 does not permit reduction in compensation liability for the compensable injury because of some recovery that takes place after such injury is incurred, particularly if such subsequent injury is not 'in whole or in part' a contributing factor in the original '*compensable* injury.' *Thus, since subrogation may only result where the same injury, or 'the compensable injury,' is the cause for the third party recovery, Section 319 may not afford relief here in the form of a credit to the employer as against its future liability for compensation payments.* In fact, even where recoveries have been achieved against a third party for medical malpractice arising out of treatment for the original compensable injury, subrogation out of the malpractice recovery has been denied. *Dale*....

....

Since the negligent conduct of the third party in this case did not occur while the employee was actually engaged in the business of his employer and whatever injury was caused by the third party was separate and apart from the original compensable injury, we can find no er-

ror in the Board's decision .... (emphasis in original and added; citations omitted).

*Id.* at 715–16.

 Here, the WCJ found that Bridges sustained two separate and distinct injuries. Firstly, Bridges suffered a back injury while employed by Brubacher and second, Bridges was a victim of intentional discrimination incurred while employed by Diesel. The discriminatory conduct on the part of Diesel was totally unrelated to the performance of his duties as a master mechanic with Brubacher and we believe the discharge was separate and apart from his original back injury. Section 319 of the Act requires causation between the injury and the act or omission of a third party to facilitate subrogation. When the language of a statute is unambiguous this Court is precluded from resorting to other methods of statutory construction. *Allegheny County Institution District v. Department of Public Welfare,* 668 A.2d 252 (Pa.Cmwlth.1995), *appeal denied* 547 Pa. 757, 692 A.2d 567 (1997). The back injury was not caused by any act or omission of Diesel.[4]

Accordingly, we affirm.

### ORDER

AND NOW, this *7th* day of *May,* 2001, the order of the Workers' Compensation Appeal Board in the above captioned matter is affirmed.

DOYLE, President Judge, Concurring.

While I agree with the Majority that the Board properly affirmed the decision to deny Brubacher's petition for a subrogation lien, I write separately because I do not agree with the Majority's analysis and reliance on *Dale Manufacturing Co. v.*

*Bressi,* 491 Pa. 493, 421 A.2d 653 (1980) and *Maitland Brothers Co., Inc. v. Workmen's Compensation Appeal Board (Moser),* 92 Pa.Cmwlth. 421, 499 A.2d 713 (1985), to reach that conclusion.

On the other hand, I also do not agree with the analysis, or conclusion, of the dissent which seems to suggest that an employer has a subrogable interest against a third party tortfeasor by applying a *"but for"* causal connection standard between the work-injury and the subsequent event leading to the third party recovery. As Judge Leadbetter correctly observes, however, in her dissenting opinion, "courts have repeatedly recognized that subsequent events which do not flow naturally from the initial work-related injury may themselves, under certain circumstances, be compensable to the extent that they increase the level or duration of the disability." (Dissent, op. at 1280.)

The proper causation analysis is best illustrated, I believe, in *Powell v. Sacred Heart Hospital,* 99 Pa.Cmwlth. 575, 514 A.2d 241 (1986), a case involving a recovery for a death caused by malpractice that occurred during surgery related to decedent's work-related back injury, where Judge Barbieri distinguished *Dale* and wrote:

> Our decision in *Dale* was affirmed by the Supreme Court ... but on the ground that there was insufficient evidence on which to make a determination as to whether the failure of a surgeon to remove a cottonoid pad from the wound and the subsequent surgery required for the removal of the pad 'either aggravated the original injury or caused a new and independent one.' .... Here, however, there is no question that the surgical procedure, to alleviate a condition

---

4. We note that although Bridges was the victim of Diesel's discriminatory conduct Brubacher did not incur any greater liability than if Bridges had not been hired by Diesel.

caused in the course of employment and for which compensation liability had been accepted by the insurer, was not a separate event dissociated from the original injury. In fact, the circumstances here involve a surgical death from one of the regular hazards of surgery, anesthesia, quite unlike the failure to remove a cottonoid pad from the wound in *Dale.* Here, and as contended in the third party action, the decedent suffered a respiratory arrest leading to a cardiac arrest whereupon the surgery was aborted but decedent died when taken to the intensive care unit. Indeed, we find a striking similarity of this case to *Hornetz [v. Philadelphia & Reading Coal & Iron Co.,* 277 Pa. 40, 120 A. 662 (1923) ] where a mineworker who sustained a compound fracture of his right index finger at work for which he was operated upon with the use of anesthesia which caused dilation of his heart and death. The Supreme Court sustained an award of compensation benefits for the death upon the following statement:

> The violence caused the injury, the injury caused the operation, the operation caused the anesthetization, the anesthetization caused dilation of the heart and dilation of the heart caused death. Hence there was a causal connection between the [original] violence and [the subsequent] death.

*Powell,* at 244–245. Based on the above reasoning, the *Powell* Court concluded that the insurer was entitled to subrogation out of the amount received in the malpractice action

In my view, the analysis applied in *Powell* and *Hornetz* to determine the causal connection between the original work injury and the subsequent event for which a third party is liable is analogous to the traditional tort standard of causation referred to as proximate or legal cause: an actor's conduct is the legal cause of a harm where the conduct is a substantial factor in bringing about the harm. *See Hicks v. Metropolitan Edison Co.,* 665 A.2d 529 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 544 Pa. 638, 675 A.2d 1253 (1996).

Applying traditional tort causation principles to the facts in the case sub judice, it is clear that the subsequent event here— unlawful discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213—was not causally connected to the injury that Claimant sustained while working for Brubacher. The civil rights claim against Diesel Services was an absolute distinct cause of action secured by a federal statute, a statute rooted in social policy, and the action was based on the intentional wrongful conduct of Diesel. Therefore, the Majority correctly concluded that the Board did not err in denying Brubacher's petition for a subrogation lien.

LEADBETTER, Judge, Dissenting.

This case raises the novel issue of whether an employer paying workers' compensation benefits can assert a subrogation lien against an employee's third party recovery from a subsequent employer when the recovery is based upon a civil rights claim stemming directly from the compensable injury. Because I believe that an employer may do so, I respectfully dissent.

Our courts have repeatedly recognized that subsequent events which do not flow naturally from the initial work-related injury may themselves, under certain circumstances, be compensable to the extent that they increase the level or duration of the disability. *Hornetz v. Philadelphia & Reading Coal & Iron Co.,* 277 Pa. 40, 120 A. 662 (1923). Similarly, a recovery against third parties responsible for such

later events may be subject to subrogation under Section 319.[1] *Powell v. Sacred Heart Hosp.*, 99 Pa.Cmwlth. 575, 514 A.2d 241 (1986). Review of cases in this court reflects that a two-part test has emerged to determine whether subrogation is appropriate. The employer must establish: (1) a causal connection between the original work-related injury and the subsequent event for which a third party is liable;[2] and (2) that as a result of the subsequent event employer was compelled to pay compensation benefits greater than those required by the initial injury.[3] *See Griffin v. Workers' Compensation Appeal Bd. (Thomas Jefferson Univ. Hosp.)*, 745 A.2d 61, 64 (Pa.Cmwlth.1999); *Powell*, 514 A.2d at 244.

It is apparent that both prongs of the test have been met in this case. Claimant's back injury caused Diesel Services' insurance provider to deny coverage and that denial caused Diesel Services to terminate Bridges.[4] First, the causal chain in the present case is even more direct than in the medical malpractice situation, where subrogation claims are routinely allowed. *See, e.g., Powell*, 514 A.2d at 245 [quoting *Hornetz*, 277 Pa. at 41, 120 A. at 662 ("The violence caused the injury, the injury caused the operation, the operation caused

the anesthetization, the anesthetization caused dilatation of the heart, and dilatation of the heart caused death. Hence there was a causal connection between the [original] violence and [the subsequent] death.") ]. Second, as a direct result of Diesel Services' wrongful action, Brubacher's weekly compensation payments to Bridges increased from $245.26 to $455.00. Accordingly, subrogation should have been allowed.

PELLEGRINI, Judge, joins this dissenting opinion.

---

**1.** Section 319 of the Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

**2.** *Compare with Maitland Bros. Co., Inc. v. Workmen's Compensation Appeal Bd. (Moser)*, 92 Pa.Cmwlth. 421, 499 A.2d 713 (Pa. Cmwlth.1985) (subrogation was disallowed because of the lack of a causal connection between claimant's work-related back injury and his subsequent automobile accident).

**3.** *Compare with Jefferson Med. College Hosp. v. Savage*, 7 Pa.Cmwlth. 35, 298 A.2d 694 (1972) (subrogation was disallowed because the additional injury did not give rise to any additional compensation payments).

**4.** Paragraph 26 of Bridges' complaint against Diesel Services alleges, "Two weeks after

Plaintiff commenced employment, an employee, agent, and/or servant of Defendant employer's Worker's Compensation insurer ... refused to extend required worker's compensation coverage to plaintiff *due to its concerns about potential actuarial risk presented by Plaintiff's prior back injury*." (Emphasis added).

Paragraph 28 of the complaint alleges, "In spite of Plaintiff's acknowledged superior qualifications for the position, Plaintiff's outstanding job performance, and Aetna's written willingness to assume worker's compensation coverage for Plaintiff, Plaintiff was terminated by [Diesel] on approximately November 22, 1993."