Garrett HANNIGAN, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (O'BRIEN ULTRA SERVICE STATION), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 2004.

Decided Nov. 1, 2004.

---

Richard T. Kupersmith, Philadelphia, for petitioner.

Deborah Beck, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, LEAVITT, Judge.

OPINION BY Judge LEADBETTER.

The issue presented for review is whether an employer is entitled to subrogate against uninsured motorist benefits that the claimant receives under a policy of motor vehicle insurance purchased by someone other than the claimant, the employer or the tortfeasor who caused the motor vehicle accident. The Workers' Compensation Appeal Board (Board) concluded that employer was entitled to subrogate against the funds and reversed the order of the Workers' Compensation Judge (WCJ). The Board's order is consistent with both the analysis set forth in recent appellate case law, particularly *City of Meadville v. Workers' Compensation Appeal Board (Kightlinger)*, 810 A.2d 703 (Pa.Cmwlth.2002), *alloc. denied,* 578 Pa. 702, 852 A.2d 313 (2004), and *Poole v. Workers' Compensation Appeal Board (Warehouse Club, Inc.)*, 570 Pa. 495, 810 A.2d 1182 (2002), and the statutory scheme for coordination of benefits evident in the Workers' Compensation Act (Act)[1] and Motor Vehicle Financial Responsibility Law (MVFRL).[2] Accordingly, we affirm the order of the Board.

Factually, the matter is not in dispute. Claimant worked as a mechanic for employer O'Brien Ultra Service Station. On November 9, 1995, claimant sustained work-related injuries when he was involved in a car accident while driving a customer's car. The other motorist was not insured. Thereafter, claimant received total disability benefits pursuant to a notice of compensation payable. Claimant subsequently made a claim under the customer's motor vehicle insurance policy and received $275,000 in uninsured motorist benefits. In November of 1999, employer filed a petition for modification, seeking to subrogate against claimant's third-party recovery. Because both parties agreed to the above-referenced facts, no testimony was taken on the petition.

The WCJ concluded that since employer had not paid for the motor vehicle insurance and the insurance was intended to protect the owner of the car rather than employer, employer was not entitled to subrogate against the recovery. Accordingly, the WCJ denied employer's modification petition. On appeal, the Board reversed. In doing so, the Board considered, among other things, the purposes served by subrogation, the 1993 amendments to the MVFRL,[3] and this court's decision in *City of Meadville*. The instant appeal followed.

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

2. 75 Pa.C.S. §§ 1701–1799.7.

3. Act of July 2, 1993, P.L. 190 (often referred to as Act 44).

■ Claimant argues on appeal that employer is not entitled to subrogate against the uninsured motorist benefits that he received under the customer's motor vehicle insurance policy because employer did not pay for or procure the insurance policy under which the recovery was made and that insurance policy was not intended to benefit the third-party tortfeasor but its insured, the owner of the car claimant was driving at the time of the accident. We disagree with claimant's characterization of uninsured motorist coverage and with his assertion that the fact that someone other than employer paid for the coverage is determinative of employer's right of subrogation.

Section 319 of the Act, 77 P.S. § 671, provides in relevant part:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this [Act] by the employer. . . .

■ In *City of Meadville,* this court reiterated the purposes served by the employer's statutory right of subrogation:

> [T]he rationale for the right of subrogation is threefold: to prevent double recovery for the same injury by the claimant, to insure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his negligence. . . . "[S]ubrogation is just, because the party who caused the injury bears the full burden; the employee is made 'whole,' but does not recover more than what he requires to be made whole; and the employer, innocent of negligence, in the end pays nothing." Thus

where a third-party's negligent conduct causes injury to an employee actually engaged in the business of his employer, there is a clear, justifiable right to subrogation under Section 319 of the Act. 810 A.2d at 704–05 [quoting *Brubacher Excavating, Inc. v. Workers' Compensation Appeal Board (Bridges),* 774 A.2d 1274, 1277 (Pa.Cmwlth.2001), *aff'd,* 575 Pa. 168, 835 A.2d 1273 (2003)]. *Accord Poole.* In order to assert its right of subrogation, the employer must demonstrate that it was compelled to make payments under the Act due to the negligence of a third party and that the fund from which it seeks subrogation was for the same compensable injury for which the employer was liable under the Act. *Poole,* 570 Pa. at 499, 810 A.2d at 1184.

■ Initially, it is important to note that Section 1731(b) of the MVFRL, 75 Pa.C.S. § 1731(b), defines "uninsured motorist coverage" as "protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are *legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles.* . . ." (Emphasis added). Thus, by definition, the recovery of uninsured motorist benefits is premised on the liability or negligence of another driver; otherwise, there would be no legal entitlement to the recovery of damages. As our Supreme Court noted in *Gardner v. Erie Insurance Co.,* 555 Pa. 59, 70, 722 A.2d 1041, 1046 (1999), "recovery [of uninsured motorist benefits] derives from the contractual commitment of the insurer to provide coverage for injury resulting from the fault of the uninsured motorist, and benefits may be payable to the injured occupant by virtue of his status as a third-party beneficiary." With respect to uninsured motorist coverage, the American Jurisprudence encyclopedia states that it "is not intended to serve as a substitute for

comprehensive personal liability insurance, but rather to provide protection for the innocent party *by making the insurance carrier stand as the insurer of the uninsured motorist ....*" 7 Am Jur 2d Automobile Insurance § 36 (footnotes omitted and emphasis supplied). *Accord Boris v. Liberty Mut. Ins. Co.,* 356 Pa.Super. 532, 515 A.2d 21 (1986).[4]

In *City of Meadville,* this court addressed the issue of whether the employer's workers' compensation carrier was entitled to subrogate against the uninsured/underinsured motor vehicle benefits recovered by the injured employee under the employer's motor vehicle insurance policy. The employee received the funds because the third-party tortfeasor was either uninsured or underinsured at the time of the accident. In concluding that the employer was entitled to subrogate against the funds, this court relied in part on *Warner v. Continental/CNA Insurance Cos.,* 455 Pa.Super. 295, 688 A.2d 177 (1996) and *Gardner.* Although we discussed these two cases in *City of Meadville,* it is appropriate to review them again here because they demonstrate that the coordination of benefits scheme currently set forth in the MVFRL supports

our conclusion today that subrogation is proper.

In *Warner,* the Superior Court addressed the issue of whether the exclusivity provision of the Act[5] precluded an employee injured in a work-related automobile accident from recovering underinsured benefits[6] from the employer's motor vehicle insurance policy. In resolving this issue, the Superior Court examined the 1993 amendments to the MVFRL (hereafter referred to as Act 44). Prior to Act 44, the statutory scheme set forth in the MVFRL precluded a claimant from recovering in a third-party tort action amounts that he had received under the Workers' Compensation Act, and the employer had no right of subrogation against the claimant's tort recovery. *See City of Meadville;* former Sections 1720 and 1722 of the MVFRL, 75 Pa.C.S. §§ 1720 and 1722. Specifically, former Section 1720 of the MVFRL provided: "In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits...." In tandem with former Section 1720, former Section 1722 provided:

---

**4.** In *Boris,* the Superior Court noted:

[The exclusivity provision of the Act] does not mean that [the claimant] has given up the right to seek redress from an unrelated third party. Consequently, he must be allowed to pursue that same course of action against the carrier of uninsured motorist benefits; despite the fact that the carrier does not represent the interests of the uninsured motorist, it does stand in his shoes as concerns suits by the injured party.

515 A.2d at 25.

**5.** Section 303 of the Act, *as amended,* 77 P.S. § 481, entitled, "Exclusiveness of remedy; actions by and against third-party; contract indemnifying third-party," provides in pertinent part:

(a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in [this act] [footnotes omitted].

**6.** Section 1731 of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1731, defines "underinsured motorist coverage" as "protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are *legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. ...*" (Emphasis added).

In any action for damages against a tortfeasor, or any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation....

Thus, as we noted in *City of Meadville*, under the former statutory scheme, a claimant could not recover in a tort action against a third party amounts paid under workers' compensation and the employer had no right of subrogation against a claimant's subsequent tort recovery. 810 A.2d at 705 n. 6. We further noted that, " 'The effect, and obvious legislative intent, was to mandate that the ultimate burden for payment of compensation benefits remain with Workers' Compensation insurance and not be passed on to the automobile insurance [carrier] (and the premiums by which auto insurance is funded) [footnote omitted].' " *Id.* [quoting *Updike v. Workers' Compensation Appeal Board (Yeager Supply Inc.),* 740 A.2d 1193, 1195 (Pa.Cmwlth.1999)].

With Act 44, however, the legislature concurrently repealed Sections 1720 and 1722 as they relate to workers' compensation. Consequently, in an action involving an automobile post-Act 44, an employee's third-party recovery is not reduced by the amount of workers' compensation benefits received, and the workers' compensation carrier has the right to subrogate against any benefits the claimant receives in connection with the third-party action. *City of Meadville,* 810 A.2d at 705 n. 6. *See also Gardner,* 555 Pa. at 67–68, 722 A.2d at 1045; *Warner,* 688 A.2d at 183. Significantly, in making this double change, the General Assembly preserved a scheme which allowed claimants to be made whole but prevented their double recoveries, while shifting the ultimate burden from innocent employers and their carriers to responsible tortfeasors and those insurers who pay in their stead.

Act 44 also repealed Sections 1735 and 1737 of the MVFRL, which had specifically allowed employees to assert claims against their employers' un-and underinsured motorist coverage without reduction for compensation benefits paid.[7] After reviewing the Act 44 amendments, the Superior Court in *Warner* concluded that an employee injured in a work-related car accident could still recover uninsured motorist benefits under his employer's policy and such recovery was not barred by Section 303 (exclusivity provision) of the Act. Notably, the court opined:

[W]e are unable to conclude that the legislature intended the provisions of Section 303 of the [Act to] preclude recovery of underinsured motorist benefits by an injured employee under a policy issued to his or her employer, where those amendments to the MVFRL have made the purchase of underinsured and uninsured motorist benefits optional and

---

7. Former Section 1735 provided: "The coverages required by this subchapter [subchapter C; uninsured and underinsured motorist coverage] shall not be made subject to an exclusion or reduction in amount because of any workers' compensation benefits payable as a result of the same injury." Former Section 1737 provided, in turn:

Notwithstanding anything contained in the act ... known as the The Pennsylvania Workmen's Compensation Act, no employee who is otherwise eligible shall be precluded from recovery of uninsured or underinsured motorist benefits from an employer's motor vehicle policy under this chapter or the [Uninsured Motorist Act].

have granted the workmen's compensation carrier the right of subrogation.

....

*Nor is the purpose of the [Act] furthered by precluding recovery of uninsured or underinsured motorist benefits by an employee where, pursuant to the 1993 amendments to the MVFRL, the workmen's compensation carrier has the right to seek subrogation for all sums paid to or on behalf of the injured claimant. Allowing the injured employee to recover underinsured or uninsured motorist benefits from his or her employer's motor vehicle insurer will create a fund against which the employer's workmen's compensation carrier can exert its subrogation lien.*

*Warner,* 688 A.2d at 183, 185 (emphasis supplied).

Shortly thereafter, in *Gardner,* our Supreme Court addressed whether the Act's protection of employees from lawsuits by co-employees for work-related injuries,[8] precluded an injured employee from collecting uninsured motorist benefits under a co-employee's insurance policy following an accident with an uninsured driver. There, our Supreme Court examined the Act 44 amendments and concluded that they fundamentally altered the legislative scheme for coordinating benefits available to employees injured in car accidents.[9] The court found the following statement by the Third Circuit particularly persuasive:

According to the *Warner* court, the repeal of Sections 1735 and 1720 effected a single plan. Under the post-repeal law, the injured employee is permitted to recover both workers' compensation and uninsured motorist benefits, including a possible recovery from each of these two sources for the same injury. The collection by the employee of the uninsured motorist benefits, however, merely creates a fund against which the workers' compensation carrier can exert a subrogation lien for amounts it paid the employee for the already-recompensed injury. Understood in this broader context, the repeal of Section 1735—like the repeal of Section 1737—did not affect the ability of employees to recover both workers' compensation and uninsured motorist benefits. Indeed, the [Act 44 amendments] permitted the injured employee to recover more from these sources, *although the workers' compensation carrier may ultimately be the beneficiary—by the use of its subrogation lien—of any double recovery.*

555 Pa. at 69, 722 A.2d at 1045–46 (emphasis added) [quoting *Travelers Indem. Co. of Illinois v. DiBartolo,* 131 F.3d 343, 348–49 (3d Cir.1997)]. Accordingly, after examining the statutory scheme in place post-Act 44, the court agreed that an employee could recover both workers' compensation and uninsured motorist benefits for the same injury. The court also considered, however, whether an employee's recovery

---

8. Section 205 of the Act, *as amended,* 77 P.S. § 72, entitled, "Liability of fellow employe" provides that:

   If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrongdoing.

9. The General Assembly's intent to coordinate benefits and prevent duplicative payments to an injured claimant is also evident in the 1996 amendment to Section 204 of the Act, 77 P.S. § 71, which allows an employer to credit against the amount of workers' compensation benefits payable, *inter alia,* severance benefits paid by the employer as well as benefits from a pension plan to the extent funded by the employer.

under a co-employee's uninsured motorist coverage constituted a recovery against the co-employee in violation of Section 205 of the Act. In concluding that such a recovery was not prohibited, the court observed as follows:

> [Section 1731 of the MVFRL explains] that [uninsured motorist coverage] is available for persons who are "legally entitled to recover" for injuries arising out of the maintenance or use of a motor vehicle. . . . Indeed, consistent with the standard form for such insurance ... the operative terms of [the co-employee's] policy with [the co-employee's motor vehicle insurance carrier] incorporate this "legally entitled to recover" concept in favor of an injured occupant. Thus, recovery derives from the contractual commitment of the insurer to provide coverage for injury resulting from the fault of the uninsured motorist, and benefits may be payable to the injured occupant by virtue of his status as a third-party beneficiary. . . . Such contractual recovery, where premised upon wrongful third-party conduct, is not against the co-employee, nor does it proceed on the basis of any actual or potential legal liability on the part of the co-employee.

555 Pa. at 70–71, 722 A.2d at 1046 (citations omitted). Therefore, the court concluded that an employee injured in a work-related automobile accident could recover under a co-employee's motor vehicle insurance policy.

Subsequently, in *City of Meadville*, the issue of the employer's right to subrogate against an uninsured or underinsured motorist recovery was before the court. We examined the Act 44 amendments to the MVFRL, the purposes served by subroga-

tion and the opinions in *Warner* and *Gardner*, and held that they supported the conclusion that the employer was entitled to subrogate against its employee's recovery under the employer's motor vehicle policy.[10] Importantly, our decision did not hinge on the fact that the employer paid the premiums for the policy under which benefits were paid to the claimant; nor did our decision hinge on whom the uninsured/underinsured coverage was intended to benefit. Rather, our decision rested on the following rationale:

> [T]he nature of uninsured and underinsured benefits as well as [the claimant's] settlement itself are premised on the fault of a third party; if the third party had been insured or had sufficient insurance coverage, then it would have been unnecessary for claimant to seek benefits under employer's policy. Indeed, if the third party had been adequately insured and claimant had reached a settlement with him/her, there is no question that [employer's workers' compensation carrier] could assert its subrogation lien against those funds. Here, employer's auto insurer is essentially paying damages resulting from the fault of a third party. It would be illogical to allow a claimant who is injured by the actions of an uninsured/underinsured third party and recovers uninsured/underinsured benefits under employer's automobile insurance policy to be in a better position than the claimant who recovers directly from the third-party tortfeasor.

810 A.2d at 707.

Thus, the linchpins of our conclusion that the employer was entitled to assert its Section 319 right of subrogation were that such a result was contemplated by the

---

**10.** *See also Schwaab v. Workers' Compensation Appeal Board. (Schmidt Baking Co., Inc.),* 832 A.2d 1164 (2003).

statutory scheme in place *and* that the funds received from the motor vehicle carrier represented the damages the third-party tortfeasor would have paid had he been adequately insured. We conclude that the language of Section 319, which provides that "the employer shall be subrogated to the right of the employe . . . against such third party" must be (and has been) construed by our appellate courts to include both direct recoveries from third-party tortfeasors as well as recoveries paid on behalf of or for the liability of that third party. Such a construction serves the purposes underlying Section 319. In addition to this court's decision in *City of Meadville,* our Supreme Court's recent decision in *Poole* further demonstrates this construction of Section 319.

In *Poole,* the claimant received workers' compensation benefits following a slip and fall on ice. The claimant sought to pursue a third-party action against the owner of the property where he fell, but his attorney filed suit against the wrong party. As a result of counsel's error, Poole's third-party complaint was dismissed and the statute of limitations on his tort action ran. Poole filed a legal malpractice action against his attorney, which was resolved with a settlement. Poole's employer then sought to subrogate against the settlement funds. While the WCJ and Board concluded that subrogation was appropriate, we disagreed. *Poole v. Workers' Compensation Appeal Board (Warehouse Club, Inc.),* 770 A.2d 385 (Pa.Cmwlth.2001), *rev'd,* 570 Pa. 495, 810 A.2d 1182 (2002). On appeal, our Supreme Court addressed whether the employer's reliance on the claimant's legal malpractice complaint was sufficient to sustain the employer's burden of proof that it was compelled to pay benefits by reason of the negligence of a third party and that the fund from which it sought subrogation was for the same compensable injury for which the employer had made payments under the Act. In concluding that subrogation was proper, the court noted that a legal malpractice action requires the plaintiff to prove that he had a viable cause of action against the party he sought to sue in the underlying case. The court stated in pertinent part:

> [T]he employee must demonstrate not merely an injury as a result of the malfeasance of his previous counsel, but also the malfeasance of the original tortfeasor which resulted in the underlying injury. Thus, an employer may rely upon the employee's legal malpractice action to demonstrate that "the compensable injury is caused . . . by the third party." Furthermore, we find that this result is mandated by the underlying rationale of subrogation in the context of the Workers' Compensation Act. The employee is made whole for his injury while not receiving a double benefit. The employer is not compelled to make compensation payments for the negligence of a third party. Finally, while the underlying tortfeasor may have escaped liability due to the statute of limitations and the actions of employee's previous counsel, the legal malpractice action places this liability on the proper party.

570 Pa. at 500, 810 A.2d at 1184–85.

Clearly, in concluding that the employer was entitled to assert its subrogation lien against the claimant's legal malpractice settlement, funds that were not derived directly from the third-party tortfeasor but represented that for which the tortfeasor was otherwise liable, our Supreme Court demonstrated its understanding that Section 319 does not limit subrogation to those funds received directly from the third-party tortfeasor. Rather, the Supreme Court's decision demonstrates that subrogation is appropriate where the employer has made payments under the Act because of the negligence of a third party, and the

fund against which subrogation is sought is based upon the tortfeasor's liability.

Applying these principles, we conclude that employer is entitled to subrogate against the uninsured motorist benefits claimant received under the customer's motor vehicle insurance policy.[11] Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this 1st day of November, 2004, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby AFFIRMED.

## DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent "to the majority's conclusion that employer is entitled to subrogate against the uninsured motorist benefits claimant received under the customer's motor vehicle insurance policy." I particularly dissent to the majority's attempt to distinguish *American Red Cross v. Workers' Compensation Appeal Board (Romano)*, 745 A.2d 78 (Pa.Cmwlth.2000), in footnote 11, and the characterization of the customer/car owner in this case as "some third party." The rationale applied by this Court in *American Red Cross* in denying the employer the right to subro-

gate against proceeds received from car owner's accident insurance (as opposed to a tortfeasor's liability insurance) is equally applicable to this case since claimant, although not the owner of the policy, was a third party beneficiary of that policy.

Section 319, which is entitled "Subrogation of employer to the rights of employee *against* third persons" could not be clearer, in this regard:

§ 671. Subrogation of employer to the rights of employee against third persons; subrogation of employer or insurer to amount paid prior to award.

Where the compensable injury is caused in whole or in part by *the act or omission of a third party,* the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against *such* third party to the extent of the compensation payable under this [Act] by the employer ...

77 P.S. § 671 (Emphasis added).

As our Court explained in *American Red Cross*, for purposes of subrogation, there is a distinction between the proceeds obtained by a car owner from the tortfeasor's liability insurance and proceeds re-

---

11. *American Red Cross v. Workers' Compensation Appeal Board (Romano)*, 745 A.2d 78 (Pa.Cmwlth.2000), *aff'd*, 564 Pa. 192, 766 A.2d 328 (2001) does not command a different result. There, we held that, "proceeds obtained by a claimant through his *own* insurance policy, be it uninsured or underinsured provisions of that policy, the premiums for which are paid exclusively by the claimant, are fundamentally different than proceeds obtained from a third-party and, therefore, are not subject to subrogation." *Id.* at 81 (emphasis in the original). We specifically distinguished *Warner* and *Gardner* because the benefits there were paid by a third-party's insurance carrier, not by the claimant's own policy. We then stated, "Any claimant, like anyone else, is free to insure himself or her-

self against any contingency for which he or she may obtain insurance, and we read nothing in the Act that evidences an intent on the part of the General Assembly to allow an employer to take advantage of such a claimant's foresight." *Id.* In other words, where a claimant has purchased his own insurance which pays for his injuries because of the premiums he has paid, he is entitled to the double recovery ordinarily barred by Section 319. The same cannot be said, however, of a claimant who recovers under a policy of insurance purchased by some third-party, such as a co-worker or, as here, a customer. There is simply no basis to treat the latter claimant different from a claimant who recovers from the tortfeasor or the tortfeasor's insurer.

ceived from his own accident insurance. I believe this vital distinction has been erroneously treated by the majority. Critically:

> Liability insurance ... flows to the benefit of a third party tortfeasor, and accident insurance ... is maintained solely by the claimant and flows to his benefit. ... When the insurance at issue is for the benefit of the third party tortfeasor, i.e., liability insurance which shields the tortfeasor's personal or real property from execution to the limits of the policy, an employer and its insurance carrier do have a right to subrogate to recovery workers' compensation benefits paid to the claimant. *If, however, the policy at issue flows to the benefit of the claimant,* i.e., accident insurance which provides recovery for a claimant when the tortfeasor cannot pay all or some of his total liability, *then the employer does not have such a right* because subrogation would not be against a third party tortfeasor. ... Like the Superior Court, we also must conclude that proceeds obtained by a claimant through his *own* insurance policy, be it uninsured or underinsured provisions of that policy, the premiums for which are paid exclusively by the claimant, are fundamentally different than proceeds obtained from a third party and, therefore, are not subject to subrogation.

745 A.2d at 81 (emphasis added).

In this case, Claimant **received uninsured motorist benefits by virtue of his status as a third party beneficiary under the customer's accident insurance policy.**[1] The source of those proceeds was not the tortfeasor's **liability** insurance; rather, it was the customer's accident insur-

ance. Uninsured motorist benefits are intended to benefit not only the insured, but also his resident relatives, passengers, lawful occupants and authorized drivers who are injured during the operation of the policy owner's vehicle.

For the purpose of deciding whether an employer is entitled to subrogate against the proceeds a claimant received under an uninsured motorist benefits policy I would find that there is no difference between a policy holder and his beneficiaries. In both instances, the source of the funds received by claimant is from prophylactic accident insurance, not a third party tortfeasor's fault-triggered liability insurance.

In *Brubacher Excavating Inc. v. Workers' Compensation Appeal Board (Bridges),* 774 A.2d 1274 (Pa.Cmwlth. 2001), this Court noted that subrogation serves the following purposes:

> [T]he rationale for the right of subrogation is threefold: to prevent double recovery for the same injury by the claimant, to insure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party, and to prevent a third party from escaping liability for his negligence. ... "[Subrogation] is just, because the party who caused the injury bears the full burden; the employee is made 'whole,' but does not recover more than what he requires to be made whole; and the employer, innocent of negligence, in the end pays nothing." Thus where a third party's negligent conduct causes injury to an employee actually engaged in the business of his employer, there is a clear, justifiable right to subrogation under Section 319 of the Act.

These enumerated purposes of subrogation are not achieved by the majority's

---

1. It is well settled that an injured person who makes a claim for uninsured motorist benefits under a policy to which he is not a signatory is in the category of a third party beneficiary.

*General Accident Insurance Co. of America v. Parker,* 445 Pa.Super. 300, 665 A.2d 502 (1995).

result. In an uninsured motorist situation, there is no third party to shoulder the full burden because no one, other than the uninsured tortfeasor, caused the injury. Neither the Act, nor any of the cases cited by the majority, justifies substituting the innocent customer's insurance policy (the beneficiary of which was Claimant) as the source of proceeds from which employer has a right to subrogation. Unfortunately for the employer in this situation, because the tortfeasor was uninsured, there is no existing pocket for purposes of subrogation. There is simply no fund available to which the employer is entitled to subrogate. That unfortunate fact does not entitle an employer to subrogate against the proceeds received from "some other third party" who had the foresight to protect himself, his passengers and occupants against uninsured drivers.

Contrary to the majority's conclusion, neither *City of Meadville* (where the workers' compensation carrier was allowed to subrogate against uninsured motorist benefits paid to claimant by the employer's motor vehicle carrier) nor *Poole* (where the employer was entitled to subrogate proceeds from the claimant's legal malpractice claim) compel this Court to ignore the plain and unambiguous language of Section 319 of the Act and expand an employer's right to subrogation against proceeds received from "any and all third parties" regardless of the source.

Just as this Court in *American Red Cross* declined to allow the employer to subrogate against the proceeds received from the car owner's own policy, this Court should decline to allow the employer to subrogate against uninsured motorist benefits provided by that policy's third party beneficiary coverage.

I would reverse the Board and reinstate the order of the WCJ.

**DISSENTING OPINION BY Judge FRIEDMAN.**

I must respectfully dissent to the majority's conclusion that O'Brien Ultra Service Station (Employer) is entitled to subrogate against the uninsured motorist benefits received by Garrett Hannigan (Claimant) under the policy purchased by a third party who was not responsible for Claimant's injuries. While the majority spends a great deal of time discussing the case law in this area, I believe that the analysis should begin and end by applying the clear and unambiguous language of section 319 of the Workers' Compensation Act (Act)[1] because where the words of a statute are clear and free from all ambiguity, any further deliberation as to its meaning is unwarranted. *Meier v. Maleski,* 670 A.2d 755 (Pa.Cmwlth.1996), *aff'd,* 549 Pa. 171, 700 A.2d 1262 (1997). Such is the case here.

Section 319 of the Act, which provides for an employer's right to subrogation, sets forth, in relevant part:

> Where the compensable injury is *caused in whole or in part by the act or omission of a third party,* the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, *against such third party* to the extent of the compensation payable under this [Act] by the employer; reasonable attorney's fees and other proper disbursements incurred in obtaining a recovery or in effecting a compromise settlement shall be prorated between the employer and employe, his personal representative, his estate or his dependents.

77 P.S. § 671 (emphases added).

This language clearly limits an employer's right of subrogation to those instances

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.

where the claimant recovers from a third-party tortfeasor. The majority concludes that "the language of Section 319 . . . must be (and has been) construed by our appellate courts to include both direct recoveries from third-party tortfeasors as well as recoveries paid on behalf of or for the liability of that third party." (Majority op. at 12.) However, I disagree that we have such authority, and I am particularly troubled when the unambiguous language of the Act is interpreted in a way that adversely affects claimants.[2] As we stated in *American Red Cross v. Workers' Compensation Appeal Board (Romano)*, 745 A.2d 78, 81–82 (Pa.Cmwlth.2000), *aff'd*, 564 Pa. 192, 766 A.2d 328 (2001),

> By amending the Act in 1993, the General Assembly explicitly afforded employers limited subrogation rights, *i.e.*, only against sums received from suits against **third party tortfeasors.** If the General Assembly desired to make the right to subrogation absolute, regardless of the source of the recovery, it certainly could have done so, but the explicit language of Section 319 is limited. Absent ambiguity in this section of the Act, it is not the role of this Court to interpret the

Act further than applying the plain meaning of the section.

Because Claimant received uninsured benefits pursuant to an accident insurance policy held by an insured who was not responsible for Claimant's injuries, Employer simply is not entitled to subrogation under section 319.

Moreover, I point out that the rationale justifying subrogation requires that *three* enumerated purposes be satisfied. That is, subrogation is appropriate only where it would: (1) prevent double recovery for the same injury by the claimant; (2) ensure that the employer is not compelled to make compensation payments made necessary by the negligence of a third party; *and* (3) prevent a third party from escaping liability for his negligence. *Brubacher Excavating Inc. v. Workers' Compensation Appeal Board (Bridges)*, 774 A.2d 1274 (Pa.Cmwlth.2001), *aff'd*, 575 Pa. 168, 835 A.2d 1273 (2003). The majority's result fails to satisfy the threefold test for subrogation in that it would allow the uninsured tortfeasor to escape liability and would place the burden on the non-negligent insured.[3]

---

**2.** It is this court's "obligation to interpret the Act liberally to effectuate its humanitarian purpose . . . and to resolve borderline interpretations in favor of the injured employee. . . ." *Hoffman v. Workers' Compensation Appeal Board (Westmoreland Hospital)*, 559 Pa. 655, 660, 741 A.2d 1286, 1288 (1999).

**3.** Thus, *Poole v. Workers' Compensation Appeal Board (Warehouse Club, Inc.)*, 570 Pa. 495, 810 A.2d 1182 (2002), is clearly distinguishable from the present matter. In that case of first impression, our supreme court held that proceeds from a claimant's legal malpractice claim are subject to subrogation. Noting that the unique nature of a legal malpractice claim required the claimant to demonstrate that he suffered injury due to the *malfeasance of both his counsel and the original tortfeasor*, the court determined that, *because all three purposes were satisfied*, the

"result is mandated by the underlying rationale of subrogation in the context of the Workers' Compensation Act." *Id.* at 499, 810 A.2d at 1184. Explaining, the court stated,

> The employee is made whole for his injury while not receiving a double benefit. The employer is not compelled to make compensation payments for the negligence of a third party. Finally, while the underlying tortfeasor may have escaped liability due to the statute of limitations and the actions of employee's previous counsel, *the legal malpractice action places this liability on the proper party.*

*Id.* at 500, 810 A.2d at 1185 (emphasis added).

As to the majority's reliance on *City of Meadville v. Workers' Compensation Appeal Board (Kightlinger)*, 810 A.2d 703 (Pa. Cmwlth.2002), *appeal denied*, 578 Pa. 702, 852 A.2d 313 (2004), to support its position, I

Accordingly, for these reasons, I would reverse.

concede that the reasoning applied in that case appears to demand a contrary result here. Nevertheless, I am not persuaded by *City of Meadville* because I believe it suffers from the same flaws that afflict the majority's opinion here to the extent that the result in *City of Meadville* conflicts with the plain language of section 319 of the Act and fails to completely satisfy the threefold rationale justifying subrogation. Quoting *City of Meadville*, the majority reiterates the rationale that "[i]t would be illogical to allow a claimant who is injured by the actions of an uninsured/underinsured third party and recovers uninsured/underinsured benefits ... to be in a better position than the claimant who recovers directly from the third party tortfeasor." *Id.* at 707. However, where the General Assembly has expressed its intent in clear and unambiguous language, it is for that body, not this court, to effectuate any change in meaning.