Gloria PANTELIS, Appellant,

v.

ERIE INSURANCE EXCHANGE,
Appellee.

Superior Court of Pennsylvania.

Argued Aug. 30, 2005.

Filed Jan. 4, 2006.

Dominic D. Salvatori, Pittsburgh, for appellant.

Craig R.F. Murphey, Erie, for appellee.

· BEFORE: LALLY–GREEN, POPOVICH, and JOHNSON, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Gloria Pantelis, appeals from the trial court's order of January 6, 2005. We affirm.

¶ 2 The trial court recited the procedural history and found the facts as follows:

This matter is before the Court on a Petition to Modify or Correct Arbitration Award filed by Gloria Pantelis, wherein she requests that the uninsured motorist arbitration award of $8,500 in her favor be set aside, modified, or corrected due to alleged errors of law. The events leading up to the arbitration may be briefly summarized as follows. Ms. Pantelis was initially involved in a single-vehicle accident on January 19, 2001, when the car she was driving slid off the road due to icy conditions and struck a telephone pole. As a result of the impact the telephone pole was severed, the vehicle was totaled, and Ms. Pantelis sustained significant injuries requiring transport to the hospital via ambulance. She sought treatment for her injuries and filed a claim for first party medical benefits, which was paid by the respondent, Erie Insurance Exchange (hereinafter "Erie Insurance"). Thereafter, roughly three months later, Ms. Pantelis was involved in a second accident, which ultimately led to the arbitration proceeding at issue.

In this second accident, occurring on April 29, 2001, Ms. Pantelis was driving a vehicle in which her fiancé and infant child were passengers when it was sideswiped by a stolen van traveling at a high rate of speed in the opposite direction as it crossed the yellow line. She initially reported no physical injury to herself or the other occupants, and the only reported damage to her vehicle was a detached side mirror and some scratches running along the driver's side of the car. However, Ms. Pantelis later filed a claim seeking first party medical benefits for treatment of a herniated cervical disk injury allegedly caused by the second accident. In response, Erie Insurance paid the first party coverage limits of $10,000. Thereafter, Ms. Pantelis filed an additional claim for uninsured motorist benefits under the same policy. Erie Insurance denied third party coverage and the case proceeded to arbitration, where after a hearing the arbitrators found in the petitioner's favor, awarding a total of $8,500 for pain and suffering and medical bills.

In requesting that this Court set aside, modify, or correct the arbitration award the petitioner alleges that the arbitrators committed errors of law by (1) permitting the respondent to pursue a causation defense despite prior payment of first party benefits; (2) refusing to permit the petitioner to introduce evidence of payment of first party benefits to counter the causation defense; and (3) allowing the respondent to introduce medical records that allegedly were hearsay. According to the petitioner, these errors of law resulted in an award that bears no rational relationship to the injuries and damages she allegedly proved at the hearing.

Trial Court Opinion, 1/6/05, at 1–2.

¶ 3 On January 6, 2005, the trial court issued an order refusing to set aside the

award. The trial court reasoned that Erie's payment of first party benefits does not preclude Erie from later disputing UM/UIM benefits in connection with the same action unless that refusal is for "frivolous or unfounded reasons." *Id.* at 4. This appeal followed.

¶ 4 Appellant raises the following issues for our review:

1. Did the arbitration panel err in allowing Erie to argue that Ms. Pantelis' neck injuries were not causally related to the subject motor vehicle collision, despite the fact that Erie had paid Ms. Pantelis' medical expenses under the first party benefits portion of the applicable policy, up to the limits of coverage, all for treatment of those very same neck injuries.

2. Did the arbitration panel err in allowing Erie to offer into evidence the application for first party benefits filed by Ms. Pantelis for the subject collision, for the purpose of showing that Ms. Pantelis had not listed the neck injury thereon, and thus as further support of its causation defense, **while at the same time refusing** to allow Ms. Pantelis to offer into evidence the fact that Erie, despite that application, had in fact paid the $10,000 in first party medical expenses for treatment of a **neck injury**.

Appellant's Brief at 4 (emphasis in original).[1]

■ ¶ 5 The parties agreed to statutory arbitration in this matter pursuant to the Arbitration Act of 1927. While the Act of 1927 was repealed and replaced in 1980 by the Uniform Arbitration Act, 42 Pa.C.S.A.

§§ 7301–7362, our Court held, subsequent to the 1980 Act, that parties remain free to agree to proceed according to the 1927 Act. *See, e.g., Nationwide Mut. Ins. Co. v. Heintz,* 804 A.2d 1209 (Pa.Super.2002). Under these circumstances, the trial court must adhere to 42 Pa.C.S.A. § 7302(d)(2) in reviewing the arbitration panel's award. *See, id.* at 1214. Section 7302(d)(2) provides as follows:

(2) Where this paragraph is applicable a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S.A. § 7302(d)(2).

■ ¶ 6 This Court may reverse a trial court's decision to affirm, modify or correct an arbitration award arising from an insurance contract only if the trial court abused its discretion or committed an error of law. *Racicot v. Erie Ins. Exch.,* 837 A.2d 496, 499 (Pa.Super.2003), *citing,* 42 Pa.C.S.A. § 7302(d)(2); *see also, Ricks v. Nationwide Ins. Co.,* 879 A.2d 796, 798–799 (Pa.Super.2005).[2]

■ ¶ 7 Appellant first argues that Appellee, Erie Insurance Exchange ("Erie"), should not have been allowed to dispute causation in the underinsured motorist proceeding after it paid first party benefits pursuant to its contract with Appellant. Appellant relies upon *Hollock v. Erie Ins.*

---

1. Appellant preserved these issues in a Concise Statement of Matters Complained of on Appeal filed pursuant to Pa.R.A.P. 1925(b).

2. Both parties filed supplemental briefs regarding whether *Ricks* provides this Court with the authority to vacate the arbitration award and order a trial *de novo.* This issue

has been a source of confusion in the past, and we addressed it in detail in *Heintz. See, Heintz,* 804 A.2d at 1213–1215. Since we affirm the trial court's order, we need not determine an appropriate remedy in the instant matter.

*Exch.*, 842 A.2d 409 (Pa.Super.2004) (*en banc*), to support her argument. In response, Erie argues that: (1) Appellant never objected to Erie's presentation of its causation defense at arbitration and therefore has waived her argument on appeal; and (2) disputing causation in connection with a third party claim while paying benefits under a first party claim does not constitute *per se* evidence of bad faith.

¶ 8 We first determine whether Appellant properly preserved her issues at the trial level. Issues not raised in an earlier proceeding cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). Our review of the arbitration transcript reveals that the arbitration panel was aware of *Hollock* and its potential relevance to the instant matter from the very beginning of the proceedings. N.T., 5/25/04, at 1–3. Both parties' closing arguments addressed the import of *Hollock.* *Id.* at 99–113. Since Appellant raised the issue in earlier proceedings, Rule 302(a) poses no bar to appellate review.

¶ 9 We now examine whether *Hollock* resolved the issue before us. In *Hollock,* the plaintiff was the named insured under a policy that included uninsured/under-insured (UM/UIM) benefits. The *Hollock* jury found that the insurer had acted in bad faith, and the insurer's argument that the verdict was against the weight of the evidence was rejected on appeal. *Hollock,* 842 A.2d at 417–418.

¶ 10 The trial court in *Hollock* provided 50 pages of fact findings evincing an exhaustive review of the evidence. *Id.* at 418. Among the trial court's findings were details of a wide range of conduct that constituted bad faith. An example cited by the court was: "[a]lthough [the insurer's] first party adjuster had accepted a causal relationship between [the plaintiff's] injuries and her 1992 accident and paid her first party claims for medical care, [the third party adjuster] declined to recognize her claim for UIM benefits, citing a lack of causation." *Id.* at 412.

¶ 11 Our review of *Hollock* reflects that our Court did not hold that this one factor constitutes *per se* bad faith. Nor did we hold that an insurer's payment of a first party claim precludes the insurer from disputing causation in a third party underinsured motorist claim. Rather, we simply held that based on the record before us, the insurer's argument failed. *Id.* at 418.

¶ 12 Our Court subsequently characterized *Hollock* as follows:

> Recently, in [*Hollock* ], this Court upheld a trial court's finding of bad faith where well-documented evidence at trial established that the insurer misrepresented the amount of coverage, **arbitrarily refused to accept evidence of causation,** secretly placed the insured under surveillance, acted in a dilatory manner, and forced the insured into arbitration by presenting an arbitrary "low-ball" offer which bore no reasonable relationship to the insured's reasonable medical expenses, and which proved to be 29 times lower than the eventual arbitration award.

*Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa.Super.2004).

¶ 13 In light of the foregoing, we conclude that the issue presented in the instant matter remained open after our opinion in *Hollock.*[3] To resolve this issue of

---

3. Appellant also cites to *Wood v. Allstate Ins. Co.*, 1997 WL 602796, 1997 U.S. Dist. Lexis 14663 (E.D.Pa. September 19, 1997), an unpublished federal district court opinion that is not binding on this Court. In *Wood,* the defendant insurer paid the plaintiff wage reimbursement because her injuries rendered her unable to work. Plaintiff filed a bad faith claim against the insurer based on the insurer's denial of UIM benefits. The federal dis-

first impression, we first consider the applicable provisions of our Motor Vehicle Financial Responsibility Law (MVFRL). The MVFRL provides the following regarding payment of benefits:

§ 1716. **Payment of benefits**

Benefits are overdue if not paid within 30 days after the insurer receives **reasonable proof** of the amount of the benefits.

75 Pa.C.S.A. § 1716 (emphasis added). The following language applies specifically to uninsured motorist benefits:

§ 1731. **Availability, scope and amount of coverage**

. . .

(b) UNINSURED MOTORIST COVERAGE.—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are **legally entitled to recover** damages therefor from owners or operators of uninsured motor vehicles.

75 Pa.C.S.A. § 1731(b) (emphasis added).

■ ¶ 14 The critical issue before us is whether an insurer's acknowledgement of "reasonable proof" that first party benefits are due precludes the insurer from later disputing whether the insured is "legally entitled to recover" third party benefits pursuant to § 1731(b). Our jurisprudence reveals that, in the case of first party benefits, the 30–day period set forth in § 1716 can be triggered by something as simple as submission of a bill from a medical provider. *See, e.g., Schappell v. Motorists Mut. Ins. Co.,* 868 A.2d 1 (Pa.Super.2004).

¶ 15 On the other hand, legal entitlement to recovery of uninsured motorist benefits for purposes of § 1731(b) is based on the wrongful conduct of a third party. *Gardner v. Erie Ins. Co.,* 555 Pa. 59, 722 A.2d 1041, 1046–1047 (1999). *See also, Hannigan v. Workers' Comp. Appeal Bd.,* 860 A.2d 632, 634 (Pa.Commw.2004) ("[B]y definition, the recovery of uninsured motorist benefits is premised on the liability or negligence of another driver; otherwise, there would be no legal entitlement to the recovery of damages.").

¶ 16 The trial court in Appellant's case addressed this issue as follows:

[The cases Appellant cites] do not stand for the proposition that an insurer who pays first party benefits is estopped from challenging causation in an uninsured/underinsured context. Rather, where an insurer's payment of first party benefits is followed by denial of third party coverage, this can support a claim for bad faith where the denial is ultimately found to be for frivolous or unfounded reasons. In this instance, Erie Insurance had a fiduciary role with respect to first party benefits. With respect to the uninsured motorist claim, however, Erie Insurance stood in the shoes of the uninsured tortfeasor, and was thus permitted to raise any and all defenses the tortfeasor might legitimately assert. As such, permitting Erie Insurance to pursue a causation defense was not contrary to law.

Trial Court Opinion, 1/6/05, at 4.

¶ 17 Our review of the applicable statutes and case law leads us to conclude that the trial court correctly determined that payment of first party benefits does not preclude an insurer from later denying

---

trict court held that the insurer's conduct in paying wage reimbursement while denying UIM coverage could support the jury's finding that the insurer acted in bad faith in denying

UIM coverage. *Id.* at *3–*4, 1997 U.S. Dist. Lexis 14663, *8–*9. In light of our analysis in the main text, we do not rely on *Wood.*

▉▉▉▉▉▉▉▉▉▉

third party UM/UIM benefits. Said another way, an insurer's payment of first party benefits does not, without more, constitute a binding admission of causation under either the statute or case law.

¶ 18 The statutory framework and applicable case law establishes that payment of UM/UIM claims is subject to a different analysis than payment of first party benefits. While *Brown* holds that the insurer has a fiduciary obligation to its insured in both contexts, neither *Brown* nor *Hollock* nor any other precedential case holds that payment of first party benefits automatically precludes denial of UM/UIM benefits.[4] The insured is free to challenge the insurer's denial of UM/UIM benefits by proving something more than the insurer's mere payment of first party benefits.

¶ 19 The record in the instant matter reflects no evidence that Erie admitted causation when it paid first party benefits. Moreover, no evidence in the record reflects that Erie arbitrarily refused to accept evidence of causation or otherwise acted in bad faith in determining that Appellant was not legally entitled to recover damages from another motorist. Thus, *Brown* and *Hollock* do not control the result here and Appellant's argument fails.

¶ 20 Appellant next argues that the arbitration panel erred in refusing to admit evidence that Erie paid $10,000.00 in medical benefits. Appellant states in her brief that "[t]he purpose of offering the payout log from Erie for the April 29, 2001 accident was to document that Erie had in fact paid $10,000.00 in **medical treatment for a cervical disc injury.**" Appellant's Brief at 15 (emphasis in original).

¶ 21 "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Ettinger v. Triangle–Pacific Corp.,* 799 A.2d 95, 110 (Pa.Super.2002). The record reflects that Erie paid Appellant's first party claim without admitting causation. Thus, Erie was not precluded from denying the third party UM/UIM claim. We, therefore, conclude that Appellant has failed to demonstrate prejudice as a result of the arbitration panel's ruling. Appellant's second argument fails.

¶ 22 Since we have considered and rejected both of Appellant's arguments, we affirm the trial court's order.

¶ 23 Order affirmed.

---

4. Said another way, a payment of first party benefits does not, in and of itself, constitute an admission of causation and a concomitant obligation to pay UM/UIM benefits.