J-A20035-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

KLINE & SPECTER, P.C.,             :      IN THE SUPERIOR COURT OF
                                   :            PENNSYLVANIA
              Appellee             :
                                   :
         v.                        :
                                   :
DONALD E. HAVILAND, JR.,           :
                                   :
             Appellant             :      No. 3206 EDA 2013

Appeal from the Order entered on August 7, 2013
in the Court of Common Pleas of Philadelphia County,
Civil Division, No. 1922 July Term 2007

BEFORE:  FORD ELLIOTT, P.J.E., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED OCTOBER 22, 2014**

Donald E. Haviland, Jr. ("Haviland") appeals from the Order confirming the arbitration panel's Decision and Award dated March 4, 2013, and entering Judgment against him in the amount of $210,220.95 plus 6% annual interest.  We reverse.

Haviland, an attorney practicing in this Commonwealth, was hired by Kline & Specter, P.C. ("K&S"), in 2001 to manage a newly-formed "Class Action Department" at the law firm.  Haviland's Employment Agreement set forth the terms that would control the apportionment of client fees and cost-sharing in the event Haviland left K&S.  In particular, Paragraph 5 of the Employment Agreement ("Employment Agreement") provided that Haviland must pay K&S a "referral fee" comprised of one-third of the gross amount of client fees he received for any non-class action matter in which he continued

to act as counsel after parting with K&S. Employment Agreement, ¶ 5. Paragraph 10 of the Employment Agreement provided that the parties agreed to enforce the Employment Agreement "by either binding arbitration under [Pennsylvania's] Arbitration Act of 1927 ["1927 Act"[1]] or through court action, at the option of K&S." *Id.*, ¶ 10 (footnote added).

While employed at K&S, Haviland assumed K&S's representation of the Commonwealth of Pennsylvania ("Commonwealth") in more than a dozen lawsuits involving major brand-name prescription drug companies. The litigation was referred to as *Pennsylvania Average Wholesale Price* (hereinafter, "*PA-AWP*"). Haviland also worked for K&S on similar litigation known as *Lupron Blues*. Haviland left K&S in 2006, and it was agreed that he would continue to act as counsel for the Commonwealth in the *PA-AWP* and *Lupron Blues* cases, as K&S was closing its Class Action Department. Six months later, Haviland's new law firm[2] secured the Commonwealth's first favorable settlement with a defendant in *PA-AWP*.

---

[1] The 1927 Act originally was codified at 5 P.S. § 161 *et seq*. However, the 1927 Act subsequently was repealed and replaced by the Pennsylvania Uniform Arbitration Act of 1980 ("1980 Act"). **See** 42 Pa.C.S.A. §§ 7301-7320. Despite the fact that the 1927 Act has been repealed, "parties remain free to agree to proceed according to the 1927 Act." **See Pantellis v. Erie Ins. Exch.**, 890 A.2d 1063, 1065 (Pa. Super. 2006); **Nationwide Mut. Ins. Co. v. Heintz**, 804 A.2d 1209, 1214 (Pa. Super. 2002); **see also Geisler v. Motorists Mut. Ins. Co.**, 556 A.2d 391, 393 (Pa. Super. 1989) (stating that arbitration conducted under the provisions of the 1927 Act constitutes a statutory arbitration).

[2] Upon leaving K&S, Haviland established his own firm, Haviland Hughes, LLC ("Haviland Hughes").

On July 13, 2007, K&S filed a Petition for the Appointment of an Arbitration to appoint arbitrators to adjudicate its claims under the Employment Agreement, primarily the allocation of fees that Haviland received, and would receive, in *PA-AWP*. K&S argued that Paragraph 5 of the Employment Agreement obligated Haviland to pay K&S one-third of the gross fees he received from the settlements and potential verdicts involving *PA-AWP* and *Lupron Blues*. The matter initially proceeded to mediation, which failed. Thereafter, the trial court ordered arbitration to proceed before three arbitrators, one selected by each party, and the third selected by the named arbitrators.

After the three arbitrators were selected, numerous hearings were held between October 12, 2009, and April 5, 2011, pursuant to the 1927 Act. On May 18, 2011, two of the three arbitrators ("the panel") agreed to give K&S a partial award on its claim for a one-third "referral fee."[3] The panel ordered Haviland to pay approximately $1.9 million, plus interest from the date the fees were received, to K&S.[4] In addition, Haviland was ordered to pay one-third, plus interest, of any fees he realized in future settlements involving

---

[3] K&S originally argued that it should be paid one-third of the gross fees received by *all* of the law firms (7 total) involved in *PA-AWP*, not just the fees received by Haviland. The arbitration panel awarded K&S one-third of the gross fees received by Haviland only. All other claims were denied, including the claims against Haviland Hughes.

[4] The cases included in this award included *Lupron Blues*, *PA-AWP–Glaxo Smith Kline* ("*GSK*"), *PA-AWP–Abbott*, *PA-AWP–Baxter*, *PA-AWP–AstraZeneca*, *PA-AWP–TAP Pharmaceutical*, and *PA-AWP–Dey*.

*PA-AWP*. The third arbitrator, retired Judge Joseph Del Sole, disagreed with the panel's award, and opined that K&S was not entitled to a referral fee in *PA-AWP* or *Lupron Blues*.[5]

Both K&S and Haviland filed Petitions to Vacate, Correct, or Modify the arbitration award. However, while these Petitions were pending, the Commonwealth reached settlements with *PA-AWP—Aventis*; *PA-AWP—Bayer*; *PA-AWP—Pharmacia and Pfizer*; and *PA-AWP—Schering Plough* (collectively "the Aventis settlement").[6] As part of this settlement, the Commonwealth Court of Pennsylvania entered an Order awarding Haviland $8,621,037.64 in fees. Thereafter, on September 20, 2011, the parties agreed to enter into a Stipulation to Confirm Arbitration Award and Enter Judgment ("Stipulation"). As part of the Stipulation, Haviland agreed to pay K&S $327,014.23 for the *Lupron Blues* settlement and $5,412,475.92 for the

---

[5] Judge Del Sole did not believe that Paragraph 5 of the Employment Agreement applied to *PA-AWP* or *Lupron Blues*, as he considered that litigation to constitute class-action matters, and Paragraph 5 only pertained to "non-class matters."

[6] The only claims remaining following the Aventis settlement involved *PA-AWP—Johnson & Johnson* and *PA-AWP—Bristol Meyers Squibb*. On August 31, 2011, the Commonwealth Court entered judgment in favor of the Commonwealth and against Bristol Meyers Squibb in the amount of $27,715,904. **See Commonwealth v. TAP Pharm. Prods., Inc.**, 36 A.3d 1197, 1295 (Pa. Cmwlth. 2011). On that same date, the Commonwealth Court entered judgment in favor of the Commonwealth and against Johnson & Johnson. **See Commonwealth v. TAP Pharm. Prods., Inc.**, 36 A.3d 1112, 1190 (Pa. Cmwlth. 2011). On June 16, 2014, the Supreme Court of Pennsylvania vacated the Commonwealth Court's Orders and remanded for further proceedings. **See Commonwealth v. TAP Pharm. Prods., Inc.**, 94 A.3d 350, 363-64 (Pa. 2014); **Commonwealth v. TAP Pharm. Prods., Inc.**, 94 A.3d 364, 366 (Pa. 2014).

*PA-AWP* settlement, and the parties agreed to withdraw their Petitions to Vacate, Correct, or Modify the arbitration award. On October 3, 2011, the trial court entered the Stipulation as an Order of court and entered Judgment in favor of K&S in the amount of $5,739,490.15.

However, on February 15, 2012, K&S filed a Petition to Re-Open the Arbitration Proceedings ("Petition to Re-Open") in order to present evidence to modify the arbitration award. K&S alleged that Haviland perpetrated a fraud on the panel by providing false information about the fees that he had received in *PA-AWP*. Specifically, K&S alleged that Haviland did not make the panel aware that he retained one-third of the fees distributed to Adam S. Levy, Esq. ("Levy"), who assisted Haviland on *PA-AWP*, in addition to the fees he received personally from the litigation. According to K&S, Haviland received approximately $600,000 more than the amount indicated by the distribution sheets presented to the panel. In response, Haviland argued that there was evidence of his fee arrangement with Levy in the initial arbitration, and, therefore, there was no fraud which would justify re-opening the arbitration proceeding. On March 2, 2012, the trial court, without holding an evidentiary hearing or making any factual finding, re-opened the arbitration proceedings and referred the matter back to the previously constituted arbitration panel.

Upon the trial court's Order, the initial arbitration panel reconvened, and heard testimony from Levy. On March 4, 2013, the panel rendered

another split-decision, finding Haviland was required to pay K&S one-third of the fees he retained from Levy in *PA-AWP*.[7] The panel ordered Haviland to pay an additional $201,220.95 to K&S, plus interest from the date the fees were received.

Haviland filed a Petition to Vacate, Correct and Modify the arbitration panel's decision. On August 7, 2013, the trial court entered an Order denying Haviland's Petition, and entering Judgment against him in the amount of $210,220.95 plus 6% annual interest from the date he received the fees.[8] Haviland filed a timely Notice of Appeal.

On appeal, Haviland raises the following issues for our review:

1. Whether the [t]rial [c]ourt erred in granting [K&S]'s request to re-open an arbitration, months after the parties stipulated and agreed to settle the judgment on the arbitration award, on [K&S]'s unfounded accusations of fraud, which were based upon the untested Affidavit of one biased witness, [Haviland]'s former law partner, [] Levy, whose averments about the alleged "fraud" were fully known to [K&S] prior to the conclusion of the first arbitration and were presented to the arbitration [p]anel for review and decision[?]

---

[7] Judge Del Sole again dissented, citing the lack of fraud on the part of Haviland and concluding that Haviland owed no additional money to K&S. Judge Del Sole specifically found that the disputed evidence was presented to the panel during the initial arbitration proceeding.

[8] We note that the trial court's entry of Judgment against Haviland in the amount of $210,220.95 plus interest, does not correspond to the amount ordered to be paid by the arbitration panel, *i.e.*, $201,220.95. **Compare** Order, 8/7/13, **with** Decision and Award of the Panel, 3/4/13; **see also** Brief for Appellee at 25 (stating that the arbitration panel awarded K&S $201,220.95 plus interest). Haviland addresses this discrepancy in his third claim on appeal.

2. Whether the [t]rial [c]ourt erred in granting [K&S]'s Petition to [C]onfirm the second arbitration award, after Levy's bald accusations of fraud went unproven in the re-opened arbitration concerning K&S's claim for a one-third "referral fee" out of Levy's cost share payments made pursuant to his [o]f [c]ounsel partnership agreement with non-party Haviland Hughes[?]

3. Whether the [t]rial [c]ourt erred in granting [K&S]'s Petition to [C]onfirm the second arbitration award, and in ordering [Haviland] individually to pay a money judgment to [K&S] in the erroneous amount of $210,220.95, based upon its erroneous calculation of a one-third "referral fee" on cost share payments made by Levy to Haviland Hughes without jurisdiction over the firm or the client, the Commonwealth [], both of whom are indispensable parties to this dispute over fees[?]

4. Whether the [t]rial [c]ourt erred in requiring proof of actual partiality on the part of one of the two arbitrators who constituted the Majority Panel, ruling in favor of awarding K&S[] its undisclosed and unconsented to "referral fee" in the [*PA-AWP*] case, in view of the arbitrator's concurrent representation of the Commonwealth in litigation involving the same defendants as the case in which the arbitrator was deciding the propriety of referral fees[?]

Brief for Appellant at 5-6.

We will address Haviland's first two claims together. In his first claim, Haviland contends that the trial court erred as a matter of law in disregarding the parties' Stipulation and re-opening the arbitration based upon unfounded claims of fraud. *Id.* at 23. Haviland argues that K&S, after months of negotiation, was fully able to determine the risks and benefits of entering into the Stipulation. *Id.* at 23-24. Haviland points out that the Stipulation confirmed the "accuracy" of the initial arbitration award and that the parties agreed to dismiss all pending motions. *Id.* at 24-25, 28.

Haviland claims that K&S was bound by the Stipulation ending further litigation, and that the trial court erred in refusing to enforce the Stipulation and the subsequent entry of Judgment in favor of K&S by allowing a new arbitration hearing. *Id.* at 25-28, 29-32, 36-39; *see also id.* at 35-36 (wherein Haviland argues that Pennsylvania favors settlement agreements and that K&S is bound by the Stipulation). Haviland emphasizes that the Stipulation and the entry of Judgment finalized the rights between the parties and that the Judgment was never vacated. *Id.* at 32. Haviland asserts that K&S failed to meet its burden of proving fraud by clear and convincing evidence in order to rescind the Stipulation. *Id.* at 32-35.

In his second claim, Haviland contends that the trial court erred in re-opening the arbitration in the absence of "clear, precise, and indubitable evidence" of fraud. *Id.* at 39. Haviland argues that there was no fraud in the initial arbitration, as the evidence that K&S claimed to have only recently learned about concerning the alleged fraud was the same evidence it possessed prior to the issuance of the original award. *Id.* at 40. Haviland asserts that K&S's claim for one-third of the referral fee made by Levy to Haviland was clearly presented to the initial arbitration panel. *Id.* at 40-49. Haviland points out that, prior to the first arbitration award, K&S sought an accounting of Levy's payments to Haviland in a letter sent to the arbitration panel, and also argued in their closing argument that they accounted for Levy's payments in detailing Haviland's obligation to K&S. *Id.* at 46-49.

Haviland claims that because K&S knew about his arrangement with Levy, K&S could not satisfy the stringent standards for opening an arbitration proceeding. *Id.* at 49-51. Haviland further argues that the trial court erred in confirming the new arbitration award after the arbitration was re-opened. *Id.* at 52-54.[9]

> Pennsylvania has a well-established public policy that favors arbitration[.] … Arbitration is a matter of contract, and parties to a contract cannot be compelled to arbitrate a given issue absent an agreement between them to arbitrate that issue. Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, arbitration agreements are to be strictly construed and such agreements should not be extended by implication.

*Knight v. Springfield Hyundai*, 81 A.3d 940, 947 (Pa. Super. 2013) (citations and quotation marks omitted); *see also* 42 Pa.C.S.A. § 7303 (establishing the validity of arbitration agreements).

Here, pursuant to Paragraph 10 of the Employment Agreement, K&S invoked the statutory arbitration clause under the 1927 Act to resolve the

---

[9] We note that K&S raises various claims that Haviland waived or failed to properly preserve his claims. However, upon our review of the record, we cannot conclude that Haviland waived his claims.

- 9 -

dispute between the parties. **See** Employment Agreement, ¶ 10.[10] Where a party seeks to modify an arbitration award conferred following proceedings under the 1927 Act, trial courts may "grant relief from an arbitration award where the award was legally erroneous." **Heintz**, 804 A.2d at 1214; **see also** 5 P.S. § 171 (repealed) (pertaining to modifying or correcting an arbitration award). However, as noted above, the 1927 Act has been repealed and replaced by the 1980 Act. The 1980 Act narrowed the grounds

---

[10] As an initial matter, we express extreme disapproval of the parties' (a law firm and an attorney) inability to properly construe the unambiguous terms of the Employment Agreement, which was ostensibly drafted by K&S. Indeed, the parties alternatively apply the 1927 Act, the 1980 Act, and common-law arbitration, **see** 42 Pa.C.S.A. §§ 7341-7342, legal standards to this case. In his Statement of the Scope and Standard of Review, Haviland asserts that the correct standard of review the trial court should have employed in analyzing K&S's Petition to Re-Open is the "contrary to law" standard in the 1927 Act, as preserved in the 1980 Act. Brief for Appellant at 2-4. However, in his Argument section, Haviland points out an alternate standard to vacate a common law arbitration, and argues that the trial court needed to find that K&S supported its request to vacate with "clear, precise, and indubitable evidence of fraud." Brief for Appellant at 50; **see also id.** at 39. Similar inconsistencies were found in K&S's brief. K&S argued that the common-law requirements for proving fraud were applicable in modifying the arbitration award. **See** Brief for Appellee at 31. K&S also points to the substantive requirements of the 1927 Act and the 1980 Act, which would also allow for the modification of the arbitration. **See id.** at 31, 32; **see also id.** at 7 (wherein K&S states that the arbitration proceeded under the terms of the 1927 Act). However, the matter clearly proceeded under the 1927 Act, as set forth in the Employment Agreement. **See** Employment Agreement, ¶ 10; **see also** Decision and Award of the Panel, 5/18/11, at 1 (stating that the parties agreed to enforce the arbitration clause in Employment Agreement pursuant to the 1927 Act); Petition for Appointment of an Arbitrator, 7/13/07, at 1 (unnumbered) (wherein K&S sought the appointment of an arbitrator under the terms of the Employment Agreement); Letter, 9/18/06, at 1-2 (unnumbered) (wherein K&S sent a letter to Haviland demanding the resolution of the claims under the arbitration clause of the Employment Agreement).

for modifying or correcting statutory arbitration awards formed under the 1980 Act to a limited set of circumstances. *See* 42 Pa.C.S.A. § 7315; *Heintz*, 804 A.2d at 1214. Nevertheless, the 1980 Act incorporated a "preservation clause" under 42 Pa.C.S.A. § 7302(d)(2), regarding the scope of review for arbitration awards made under the 1927 Act. *See Heintz*, 804 A.2d at 1214 (stating that the 1980 Act preserved the scope of review in the 1927 Act in 42 Pa.C.S.A. § 7302(d)(2)); *see also Nationwide Ins. Co. v. Calhoun*, 635 A.2d 643, 645-46 (Pa. Super. 1993). The "preservation clause" provides as follows:

> Where this paragraph is applicable[,] a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S.A. § 7302(d)(2). Thus, the trial court must review a request for modification of a 1927 Act arbitration award under the "contrary to law" standard of section 7302(d)(2). *See Pantelis*, 890 A.2d at 1065 (stating that where the parties agree to statutory arbitration under the 1927 Act, the trial court must adhere to section 7302(d)(2) of the 1980 Act in reviewing the panel's award); *see also Burke v. Erie Ins. Exch.*, 940 A.2d 472, 475 (Pa. Super. 2007).

While the 1980 Act preserved the expanded scope of review of an arbitration agreement under the 1927 Act, the 1980 Act did not explicitly

- 11 -

preserve the procedural aspects of the 1927 Act. In point of fact, no section of the 1980 Act, including section 7302(d)(2), mentions or preserves the 1927 Act's procedural requirements. **See Dunlap by Hoffman v. State Farm Ins. Co.**, 546 A.2d 1209, 1210 n.1 (Pa. Super. 1988); **see also Seay v. Prudential Prop. and Cas. Ins. Co.**, 543 A.2d 1166, 1168 (Pa. Super. 1988) (concluding that where terms of insurance contract called for arbitration in accordance with provisions of the 1927 Act, section 7320 of the 1980 Act still governed appealability of the order confirming the arbitration award).[11] Under the 1980 Act, any application *to the court* to modify or correct the award must be made "within 30 days after delivery of a copy of the award to the applicant[.]" 42 Pa.C.S.A. § 7315(a).[12] Thus, a request that the court modify a statutory arbitration award arising under the 1927 Act must be made within 30 days after delivery of the award, as provided in section 7315(a) of the 1980 Act. **See Maxton v. Philadelphia Hous. Auth.**, 454 A.2d 618, 619-20 (Pa. Super. 1982) (holding that the preservation clause does not preserve the 1927 Act's timeliness requirements and concluding that the 30-day statute of limitations of the 1980 Act would apply to a petition for review of an arbitration award).

---

[11] We note that the procedure set forth in the 1980 Act under sections 7316 and 7320 is similar to sections 172 and 175 of the 1927 Act. **See Dunlap**, 546 A.2d at 1210 n.1, n.2.

[12] The 1927 Act provides that notice of a motion to vacate, modify, or correct an award should be filed within three months after the award was filed or delivered. 5 P.S. § 173 (repealed).

Further, where a party requests the arbitrators, rather than the trial court, to modify or correct the award, the application "shall be made within ten days after delivery of the award to the applicant."  42 Pa.C.S.A. § 7311(b); *see also id.* § 7311(a) (stating that a party may seek modification from arbitrators or the trial court may submit a modification petition to the arbitrators).

If no petition for modification or correction is filed within 30 days of the delivery of the arbitration award, the proper procedure for the trial court is to enter an order confirming the arbitrators' award.  *See* 42 Pa.C.S.A. § 7315(b) (stating that where an application to modify or correct is not filed or not granted, "the court shall confirm the award as made by the arbitrators.").  In conjunction with the order confirming the arbitrators' award, "a judgment or decree shall be entered in conformity with the order. **The judgment or decree may be enforced as any other judgment or decree**."  42 Pa.C.S.A. § 7316 (emphasis added); *see also* 42 Pa.C.S.A. § 7320(a)(6) (stating that an appeal from an arbitrator's decision may be taken only from a final judgment or decree of court entered pursuant to the provisions of the 1980 Act); *Gargano v. Terminix Int'l Co., L.P.*, 784 A.2d 188, 192 n.2 (Pa. Super. 2001) (stating that the final order following an arbitration is the confirming order and judgment entered by the trial court in favor of prevailing party).

Here, following the arbitration panel's May 18, 2011 Decision and Award pursuant to the 1927 Act, the parties entered into a Stipulation resolving the issues of arbitration. Thereafter, on October 3, 2011, the trial court entered an Order confirming the arbitration award based upon the Stipulation, and entering Judgment in favor of K&S. **See** Stipulation to Confirm Arbitration Award and Enter Judgment, 10/3/11. The Judgment represented the *full amount* of the fees owed under the arbitration panel's decision, up to that point in time, including those incurred in *Lupron Blues* and *PA-AWP*. **See id.**; **see also** Brief for Appellee at 34. Nevertheless, over four months after the entry of Judgment, K&S filed the Petition to Re-Open, seeking to re-open the arbitration so that the arbitration panel could modify the common-law arbitration award. **See** Petition to Re-Open, 2/15/12, at 1, 7-8. On March 20, 2012, the trial court, without a hearing or additional findings, granted K&S's Petition to Re-Open and referred the matter to the original arbitration panel. **See** Order, 3/20/12.

In this case, K&S's Petition to Re-Open sought to modify the arbitration panel's award due to a clear demonstration of fraud under 42 Pa.C.S.A. § 7341, **Common Law Arbitration**. **See** Petition to Re-Open, 2/15/12, at 8; **see also Heintz**, 804 A.2d at 1214-15 (admonishing that petitioners seeking to modify or correct an arbitration award "should be careful to caption their petitions as petitions to modify or correct the award."). However, as noted above, this arbitration was conducted pursuant

to the 1927 Act, not common law arbitration. Further, K&S did not point to any statutory authority that would allow the trial court to re-open a 1927 Act arbitration proceeding based upon a finding of fraud. Indeed, contrary to K&S's argument, it merely had to meet the lower burden of contrary to law to modify an award under the 1927 Act. Importantly, K&S's request that the arbitration panel modify the award was made well outside the required ten-day period and was patently untimely. As K&S's Petition did not include a statutory basis for the relief it sought, and was filed nine months after the arbitration award was delivered, the trial court erroneously re-opened the arbitration so that the arbitration panel could modify the original arbitration award.

Furthermore, even if K&S sought modification of the award by the trial court, the Petition was untimely filed. The initial arbitration award was entered and delivered on May 18, 2011. K&S filed the Petition to Re-Open on February 15, 2012. Accordingly, K&S's Petition to Re-Open was patently untimely under section 7315 as it was not filed within 30 days of the award. ***See U.S. Claims, Inc. v. Dougherty***, 914 A.2d 874, 877 (Pa. Super. 2006) (stating that "[a] party must raise alleged errors in the arbitration process in a timely petition to vacate or modify the arbitration award or the claims are forever waived.").[13]

---

[13] We note that the parties filed timely Petitions to Vacate, Correct, or Modify the May 2011 arbitration award. However, these Petitions were withdrawn as part of the Stipulation.

Moreover, based upon the Stipulation, the trial court entered an Order on October 3, 2011, confirming the arbitration award and entering Judgment in favor of K&S, which was the final determination of the claims at issue. *See* 42 Pa.C.S.A. § 7316; *Gargano*, 784 A.2d at 192 n.2; *see also* Pa.R.A.P. 341(b) (stating that a final order is any order that either disposes of all claims and all parties, is expressly defined as a final order by statute, or is entered as a final order upon an express determination that an immediate appeal would facilitate resolution of the entire case). It is well-settled that "a court upon notice to the parties may modify or rescind any order within 30 days after its entry … if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505; *see also Key Auto. Equip. Specialists, Inc. v. Abernethy*, 636 A.2d 1126, 1128 (Pa. Super. 1994) (stating that section 5505 only applies to final orders).

> Under section 5505, the trial court has broad discretion to modify or rescind an order, and this power may be exercised *sua sponte* or invoked pursuant to a party's motion for reconsideration. The trial court may consider a motion for reconsideration only if the motion for reconsideration is filed within thirty days of the entry of the disputed order. The mere filing of a motion for reconsideration, however, is insufficient to toll the appeal period. If the trial court fails to grant reconsideration expressly within the prescribed 30 days, it loses the power to act upon both the motion and the original order.

*PNC Bank, N.A. v. Unknown Heirs*, 929 A.2d 219, 226 (Pa. Super. 2007) (citations, quotation marks, and brackets omitted).

Here, K&S's February 15, 2012 Petition to Re-Open, which did not seek to open or strike the judgment, but instead sought to re-litigate the

- 16 -

fees involving *PA-AWP* (settled by the October 3, 2011 Judgment) was untimely filed. Because the trial court no longer had jurisdiction to act on the Petition to Re-Open, the court erred in granting the Petition.[14] **See** Pa.R.A.P. 903, 1701.

We note that our Courts have allowed for the extensions of statutory appeal time where there is evidence of fraud. **See Maxton**, 454 A.2d at 620 (stating that where a petitioner filed an untimely petition to modify under the 1927 Act, "[t]he courts have no power to extend statutory appeal time or to allow an appeal *nunc pro tunc* in the absence of fraud, or its equivalent, or some breakdown in the court's operation."); **see also Joseph v. Advest, Inc.**, 906 A.2d 1205, 1212 (Pa. Super. 2006) (stating that "[t]he time for taking an appeal cannot be extended as a matter of grace or mere indulgence, and extensions can be granted only where fraud or breakdown in the court's operations is present.") (citation and quotation marks omitted);

---

[14] It is well-settled that a judgment entered by confession or by default "remains within the control of the court indefinitely and may be opened or vacated at any time upon proper cause shown[.]" **Shelly Enters., Inc. v. Guadagnini**, 20 A.3d 491, 493 (Pa. Super. 2011) (citation omitted). Contrarily, a judgment entered in an adverse proceeding cannot be disturbed if no appeal is filed within thirty days and "cannot normally be modified, rescinded or vacated." **Id.** at 494. Even if the Judgment entered against Haviland based upon the Stipulation is considered a judgment entered by confession, K&S admits that it did not seek to undo the May 18, 2011 Judgment, but instead sought the full amount owed by Haviland under the award that was confirmed. Brief for Appellee at 35; **see also** Petition to Re-Open, 2/15/12, at 1, 7-8. Contrary to K&S's argument, it was attempting to re-litigate claims that had been finally decided in the Judgment entered on October 3, 2011. Further, as noted **infra**, K&S was also aware of the fee arrangement between Haviland and Levy at the time the initial Judgment was entered.

*see generally Guadagnini*, 20 A.3d at 494 (stating that "judgments regularly entered on adverse proceedings cannot be opened or vacated after they have become final, unless there has been fraud ….") (citation and emphasis omitted).[15]

Here, the trial court ostensibly found that Haviland had committed fraud when it re-opened the arbitration based upon K&S's fraud allegations in its Petition to Re-Open. While K&S did not allege fraud in order to extend the statutory time limit, we will address whether the trial court properly found fraud.

> In order to prove fraud[,] the following elements must be shown: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Milliken v. Jacono*, 60 A.3d 133, 140 (Pa. Super. 2012).

The fraud alleged by K&S, and used as justification to re-open the proceedings, rested on Levy's statements regarding his payments to Haviland. In his Affidavit, Levy stated that he served "of counsel" at Haviland Hughes, but was not an employee of the firm, from September 11,

---

[15] We note that under the 1980 Act, an application to **vacate** an arbitration award must be "made within 30 days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud, misconduct or other improper means, it shall be made within 30 days after such grounds are known or should have been known to the applicant." 42 Pa.C.S.A. § 7314(b). However, the 1980 Act did not include such language in relation to untimely applications to modify or correct an arbitration award under section 7315.

2006, to September 6, 2011. *See* Affidavit, 3/14/12, at 1; *id*. at 1-2 (wherein Levy states that, while he occasionally worked at the physical location of Haviland Hughes, he rarely used any of the firm's equipment or support staff); *see also* N.T., 5/1/12, at 89. Levy stated that as part of his agreement with Haviland for the *PA-AWP* work, Haviland would retain one-third of his fees. *See* Affidavit, 3/14/12, at 2-3; *see also* N.T., 5/1/12, at 90-91.[16] Levy acknowledged that he was unaware as to how Haviland used the retained fees, but that he never agreed that the fees were payment for "overhead costs" or "cost share payments." *See* Affidavit, 3/14/12, at 3; *see also* N.T., 5/1/12, at 91.

Kila Baldwin, Esquire ("Baldwin"), an attorney for K&S, provided a separate Affidavit detailing a meeting she had with Levy, and the information she received regarding fees paid to Levy arising out of the *PA-AWP* work. Affidavit, 2/15/12, at 1-3. According to Baldwin, the evidence revealed that Levy had received approximately $600,000 less than the amount shown on the distribution sheets relied on by the panel in crafting the initial award. *Id*. at 2-3.

However, on April 4, 2011, a month prior to the arbitration panel's initial decision, K&S sent a letter to the arbitration panel stating the following, in pertinent part:

---

[16] We note that in his Affidavit, Levy states that his agreement was with Haviland and/or Haviland Hughes. *See* Affidavit, 3/14/12, at 1, 2-3. However, this appeal pertains to the fees retained by Haviland, not the firm.

Haviland's chart[, from a prior letter to the panel,] reports Haviland Hughes' net fee in connection with the [*PA-AWP* – GSK] settlement as $258,922.94. However, in its distribution sheet previously produced by [] Haviland, the final net fee was indicated as $275,247.22. … The net fee to [] Haviland is $275,247.22, which includes his fee of $258,922.94[,] and $16,324.28 paid by [] Levy to [] Haviland in connection with the [*PA-AWP* – GSK] fee award. The calculation of [] Haviland's net fees must include any fees paid to him by any of his co-counsel per his fee division agreements with them in the departed files.

It now appears that [] Haviland has not identified the referral fees paid by [] Levy as part of the fees realized by him in any of the settlements. Therefore, **the amounts previously requested by** [**K&S**] **in its findings of fact should be appropriately amended to include one-third of the referral fee paid by** [] **Levy to** [] **Haviland**[.]

* * *

We have yet to receive a distribution sheet for [the *PA-AWP* – TAP Pharmaceutical settlement,] and have no way of knowing the costs, distributions to other law firms, and/or fees paid by [] Levy to [] Haviland.

* * *

Enclosed are [K&S's] revised proposed Orders for the Panel's Consideration. Proposed Order IIA is for the Panel to award one-third of the gross fees, and Proposed Order IIB is for the Panel to award one-third of the net fees to [] Haviland, including referral fees paid by [] Levy to [] Haviland. …

K&S Letter, 4/4/11, at 1-3 (unnumbered) (emphasis added); ***see also*** N.T., 4/5/11, at 34-35 (wherein K&S, during closing argument, stated that Levy provided one-third of his legal fees to Haviland under a referral arrangement); *PA-AWP* – GSK Distribution, 6/30/07 (reflecting that Haviland provided the total amount paid to Levy, with a parenthetical indicating one-third of that amount which was paid to Haviland, and included the total

amount Haviland gained (the original amount he received plus the portion of Levy's fees)).[17] Further, in an April 12, 2011 Letter to the arbitration panel, Haviland's attorney detailed the relationship between Levy, Haviland, and Haviland Hughes. Haviland Letter, 4/12/11, at 1-3 (unnumbered). The letter specifically states that Levy had an "of counsel" relationship with Haviland Hughes and that the financial relationship between the parties obligated Levy to return one-third of the fees he earned for contribution toward the law firm's overhead. **Id.** at 2; **see also** Deposition of Levy, 10/13/09, at 363-66 (wherein Levy detailed for K&S his fee arrangement with Haviland Hughes); Haviland's Answers to K&S's Interrogatories, 10/8/09, at 11 (wherein Haviland states that Levy has an of counsel agreement with Haviland Hughes that obligated Levy to return fees to the law firm's overhead).

Here, contrary to the trial court's finding, K&S has not demonstrated that Haviland committed fraud. K&S claims that the only way it could have known about the fee arrangement was through Levy's Affidavit and subsequent testimony *after* the initial award was already in place. Brief for Appellee at 21; **see also id.** at 19 (wherein K&S admits to knowing of, and being suspicious of, the arrangement throughout the four years of

---

[17] Additionally, during a deposition of Levy by K&S, Levy stated that he received around $120,000 for the *PA-AWP* – Abbott settlement. **See** Deposition of Adam Levy, 10/5/09, at 18. Levy's answer was in stark contrast with the distribution sheet provided by Haviland, which showed that Levy was paid approximately $170,000.

arbitration proceedings, yet claims that it was defrauded and had no way of knowing that the arrangement existed in the other settlements).

However, our review discloses that K&S's Letter evidenced its awareness of the fee arrangement between Levy and Haviland six weeks prior to the initial award, yet K&S asked for the same relief sought through the re-opened arbitration proceedings. K&S explicitly addressed Haviland's "net fees" from the various cases in the distribution sheets that did not incorporate the money paid to Haviland by Levy. Importantly, K&S was also aware that Levy received fees for his work on the Aventis settlement, which was settled after the conclusion of the arbitration proceedings, and prior to entering into the Stipulation on September 20, 2011. *See* Order, 7/21/11, at 1-2 (detailing the fees received by Levy and Haviland Hughes). Thus, K&S had knowledge of the fee arrangement, knew about the payments to Levy for the settlements that occurred after the arbitration proceeding was concluded, and freely entered into the Stipulation.[18] Relevantly, Judge Del Sole, in his dissent in the re-opened arbitration proceeding, noted the following:

> The evidence presented to the Panel, during the recent proceedings, and from a review of the prior proceedings, establishes that the Panel knew of the fee arrangement between Haviland and Levy when it issued its initial Decision and Award. There exists no basis for the Panel to revisit the Award, nor for the court to direct a modification. A party dissatisfied with the

---

[18] Neither party argues that the Stipulation was procured by fraud. *See, e.g.*, Brief for Appellee at 35 (stating that K&S does not seek to undo the Stipulation).

> decision of the arbitrators must raise any claims within 30 days of the award. Claims were raised, this issue was not raised, and the parties settled the matter [in the Stipulation.] … There can be no question that this specific issue was previously raised.

Decision and Award of Panel, 3/4/13, at 5 (unnumbered) (Del Sole, dissenting). Consequently, as K&S was aware of Levy's fee arrangement prior to the initial arbitration proceeding, and yet voluntarily entered into the Stipulation settling all claims, there was no evidence of fraud or any justification for re-opening the arbitration proceedings.

To summarize, the arbitration award was secured pursuant to the 1927 Act. The trial court could only modify that award if K&S raised a timely petition evidencing that the award was "contrary to law." As noted above, K&S failed to seek any timely relief permitted under the 1927 Act or the 1980 Act. Additionally, the trial court erred in re-convening the arbitration panel based upon K&S's allegation of fraud and neglecting to enforce the Judgment entered based upon the Stipulation. As the arbitration was re-opened in error, the subsequent Order confirming the March 4, 2013 arbitration award and Judgment entered in favor of K&S are void. The Order and Judgment entered on October 3, 2011, in favor of K&S controls in this case.

Because we have afforded Haviland relief, we decline to address his remaining issues.

Order reversed. Jurisdiction relinquished.

J-A20035-14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2014